FRED GROSSMAN et al., Respondents, *v.* LEONA BAUMGARTNER, as Commissioner of Health of the City of New York, et al., Appellants.

First Department, December 1, 1964.

*Joseph N. Friedman* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for appellants.

*Lester Landy* of counsel (*Landy & Schwartz,* attorneys), for respondents.

STEUER, J. This action, brought by two operators of tattooing establishments, seeks a declaratory judgment declaring section 181.15 of the New York City Health Code unconstitutional and enjoining respondents, the Board of Health and the Department of Health, from enforcing it. The section makes it unlawful for any person to tattoo a human being. An exception is made for physicians acting for medical purposes. The plaintiffs prevailed at Special Term. We believe this disposition to be incorrect.

Several objections to the section were advanced. It was claimed that the statute does not represent a valid exercise of police power. The argument in this connection is that tattooing is a vocation which, though it may be regulated, may not be prohibited. There is no constitutional prohibition against banning a practice that is harmful or injurious (*Lincoln Union* v. *Northwestern Co.,* 335 U. S. 525). Nor is there any distinction between regulation and prohibition (*Ferguson* v. *Skrupa,* 372 U. S. 726, 732). What is harmful or injurious is a matter for the Legislature rather than the courts (*Ferguson* v. *Skrupa, supra*). Conceding these general provisions, plaintiffs contend that the particular delegation of authority to the New York City Board of Health to add provisions to the Health Code does not go to that extent. The section vesting power (New York City Charter, § 558) gives the board power " to alter, amend or repeal any part of the health code, and may therein publish additional provisions for the security of life and health in the city ".

The record shows, to our minds conclusively, that the prohibition of lay tattooing was an advisable procedure for the security of life and health. It was established that hepatitis, a serious disease of the blood for which there is no known cure, is caused by a virus. This virus, which lives in the blood of infected persons, is transmitted to the healthy by injection into their blood or tissue of the blood or blood products of the infected. Such transmissions occur to persons who have been tattooed seven times more frequently than they occur in persons who have not been tattooed. Concededly, restricting the spread of hepatitis is a proper subject of Health Code regulations. And it would appear to be uncontradictable that tattooing is a source of the spread of this dread disease. It would therefore follow indisputably that the control of tattooing comes well within the field of securing the health of the community.

We have seen that once this is determined, the method of control is for the legislative body. But even if their wisdom in providing for prohibition rather than regulation was a proper subject of judicial inquiry, the evidence submitted establishes that the course taken was the only feasible one. Prior to the enactment of the present section 181.15, the conditions resulting from the use of tattoo establishments were known. In 1959 a predecessor section, having the same number, was promulgated. It set up standards for the establishments that would tend to insure aseptic conditions. Conferences were had with all proprietors of such establishments and promises were secured of co-operation. The incidence of infection was not lowered.

The evidence further reveals that it is too much to expect that untrained personnel will adhere to the sanitary practices that are necessary to provide a reasonable insurance against infection.

Furthermore, factors that could conceivably affect determination if the legislation concerned a necessary, useful or desirable occupation are lacking. It is still true that there is no accounting for taste, but the decoration, so-called, of the human body by tattoo designs is, in our culture, a barbaric survival, often associated with a morbid or abnormal personality.*

Of the many other points raised at Special Term and on this appeal, we find but two worthy of mention. It is of no significance that the two proprietors who are the plaintiffs are able and willing to meet the sanitary standards that would provide a reasonable expectation of immunity from infection. It is not they who are on trial but the trade they are engaged in. And as it is the practices of the trade that endanger the community, they must suffer the same fate despite their ability to rise above their fellow practitioners. The test has always been whether the statute "has at least in fact some relation to the public health, that the public health is the end actually aimed at, and that it is appropriate and adapted to that end." (See *Matter of Jacobs,* 98 N. Y. 98, 115.) If the statute meets that test, individual exceptions cannot prevail against it. The goal of the common welfare as the test of constitutionality of police power regulation has not changed, though the concept of what is reasonably necessary or appropriate has.

Lastly, it is claimed that the exception allowing tattooing by a physician for medical purposes is so vague that it might invalidate the entire statute. While we do not subscribe to the view that the provision is vague, even if it were that would be of no moment in this case. The provision is, beyond doubt, a separable portion of the statute and its possible infirmity cannot affect the balance of the statute (*City Bank Farmers' Trust Co.* v. *New York Cent. R. R. Co.,* 253 N. Y. 49, 55; *People ex rel. Alpha Portland Cement Co.* v. *Knapp,* 230 N. Y. 48, 60; *People* v. *Mancuso,* 255 N. Y. 463, 473).

The judgment for plaintiffs should be reversed on the law and the facts and judgment granted to defendants, without costs.

RABIN, J. (dissenting). I dissent and vote to affirm the judgment appealed from. I agree thoroughly with the con-

---

* The evidence showed that one third of the admissions to the United States Public Health Hospital at Lexington, Kentucky, for drug addiction were tattooed. If the addict was also a sexual deviant, the incidence of tattooing was markedly higher.

clusion reached by Special Term, and with the reasons given in support of such conclusion. However there is one aspect of the case that I would like to discuss.

The use of the police power of the State may be exercised to correct a practice that presents a danger to public health. There is no question about that. How far the State may go in the exercise of that power presents a problem quite different. We deal with that problem in this appeal.

As has been so well said in *Matter of Jacobs* (98 N. Y. 98, 110): "the police power is not without limitations, and  *  *  *  in its exercise the legislature must respect the great fundamental rights guaranteed by the Constitution." It is the right of men to pursue any lawful business or occupation except when such pursuit presents danger to the health, safety or welfare of society. Where such a danger is present, its avoidance through the use of the police power is of course permissible. I believe, however, that the sanctions imposed by such police power, infringing as they do upon "fundamental rights", must not be permitted to exceed the bounds reasonably necessary to achieve such purpose.

The majority of this court, resting upon the authority of *Ferguson* v. *Skrupa* (372 U. S. 726, 732) concludes that in this case the choice to prohibit or regulate lies solely with the defendants, and such choice when made may not be the subject of judicial review. In reaching that conclusion I think the majority has read too much into the *Ferguson* case.

What did the United States Supreme Court hold in the *Ferguson* case? As I read the opinion, the court merely held that where there is a basis for the exercise of police power, that court would not interfere where a State Legislature decides to prohibit rather than regulate. In so holding, it decided that the Federal due process clause, which is designed to afford protection to the individual against the power of government, has not been violated merely because there is prohibition rather than regulation.

It does not follow, however, that a State court may not, or should not, apply a more stringent standard in the protection of the rights of individuals. The reluctance of the United States Supreme Court to interfere with the legislative policy of a State is quite understandable. However, there is no prohibition against the State court affording greater protection than the Federally mandated minimum. Compare the minimum requirements for jurisdiction imposed by the United States Supreme Court in *International Shoe Co.* v. *Washington* (326 U. S. 310) with the more stringent requirements required by the

New York State courts in *Tauza* v. *Susquehanna Coal Co.* (220 N. Y. 259).

An exercise of police power such as is here involved has as a necessary concomitant, direct interference with the rights and freedom of individuals to pursue that which has been for many years a lawful pursuit. In the light of such intrusion upon fundamental rights, the exercise of the police power should be restrained and not applied to a degree more than necessary to accomplish the purpose sought to be achieved. It should go no further.

I have no quarrel with the validity and unassailability of the finding that the practice of tattooing as presently conducted is a hazard to public health and that the hazard must be eliminated. However, the testimony of the defendants' medical experts indicates that the practice of tattooing can be safe, if properly conducted in accordance with appropriate principles of asepsis. That being so, I am of the opinion that the outright prohibition of the practice of tattooing is an unwarranted extension of the police power and therefore is invalid.

It might well be that tattooing serves a minimal social or economic purpose. But, today it is tattooing that is being prohibited, tomorrow it may be some other pursuit with a conceded social and economic usefulness. While it is unlikely that businesses such as barbershops, electrolysis or beauty salons would be outlawed — rather than regulated if possible — if they generally became a danger to the health of the community yet, holding as the majority does in this case establishes the power of an administrative agency to do so. Such power should not be sanctioned. '' The Legislature may not validly make it a crime to do something which is innocent in itself merely because it is sometimes done improperly '' (*People* v. *Bunis*, 9 N Y 2d 1, 4).

It must be stressed that here we do not consider the constitutionality of an act of the State Legislature as in the *Ferguson* case. It may not be gainsaid that a resolution adopted by an administrative agency — albeit endowed with the power to make such resolution — must stand on a different footing than a direct enactment by the State Legislature. Such agency action should be more cautiously scrutinized. In such instance we do not have the protection of the legislative investigatory process and the resultant legislative findings made in connection with the passage of a bill which contemplates an exercise of the State's police power. In any event, were such findings required to be made by these defendants, they would have to find — based on the testimony of their own experts that there is no necessity for confiscation as opposed to regulation. At least not until

a proper regulatory scheme had been devised, tried and found unworkable.

In conclusion, I am of the opinion that in the circumstances, the defendants' attempt to prohibit what was heretofore, and for many years, a lawful pursuit, constitutes an excessive use of necessary police power and thereby is violative of the fundamental rights of these plaintiffs protected and guaranteed by the Constitution.

BREITEL, J. P., McNALLY and BASTOW, JJ., concur with STEUER, J.; RABIN, J., dissents in opinion.

Judgment for plaintiffs reversed, on the law and the facts, without costs and judgment granted to defendants. Settle order on notice.