Fuld, J.
Whether the prohibition against tattooing, provided by New York City’s Health Code, constitutes an impairment of constitutional right, is the question we are here called upon' to resolve.
The Health Code of New York City, in section 181.15, recites that it “ shall be unlawful for any person to tattoo a human being, except * * * for medical purposes by [one] licensed * * * to practice medicine or osteopathy.” Each of the plaintiffs was engaged in the business of tattooing in Coney Island for some years before the provision became effective in 1961. They seek a judgment (1) declaring that the section is unconstitutional and (2) enjoining the defendants, the Board of Health and the Department of Health, from enforcing it.
At the time of the trial, the plaintiff Grossman was a laborer, the plaintiff Funk, a roofer. The former testified in detail about the manner in which he had operated his tattooing parlor six days a week, all year round, from noon to midnight, in compliance with the then applicable rules of the Board of Health, until he was forced out of business by the new Health Code provision. He had, he noted, used a sterilizer and sterilized the dyes (which were employed) in pyrex baby bottles; he admitted that he wore no gloves and that the tattooing at times resulted in some bleeding.
The evidence offered on behalf of the defendants strongly supported the conclusion that there was a connection between tattooing and serum hepatitis, that those tattooed, despite all precautions taken by the tattooer, were subjected to a far greater risk of contracting hepatitis than those not tattooed. *349 Thus, the Assistant Commissioner of the City’s Health Department, in charge of its inspection service, testified that in 1959 several cases of hepatitis, one resulting in death, had been traced to tattooing. Although the health authorities initially believed that it would be possible to adopt stringent regulations which would permit tattooing without danger to the public, supervision of the tattoo parlors to assure proper sterilization was found to be a practical impossibility and dangerous and unsanitary conditions continued to prevail. Persuaded that “the threat of hepatitis [from tattooing] was too imminent # * * too dangerous and too deadly ” to permit it to depend on regulatory measures to assure proper sterilization, the board enacted the challenged prohibitory section. The director of the Health Department’s bureau of preventable diseases also testified that there was a direct causal connection between tattooing and the disease. It was his opinion, based on a statistical analysis, that those who were tattooed ran a risk of contracting hepatitis “ seven times as great ” as those not tattooed and that “ the tattoo industry, from a public health point of view * * * [was] not regulatable ” in New York City. Other witnesses — a dermatologist, a psychiatrist and a public health expert — furnished additional confirmation for this view: all of them agreed that tattooing was a health hazard that could be controlled only by prohibition.
Despite this testimony, the trial court concluded, in essence, that there was no justification for abandoning regulation in favor of prohibition and declared the Health Code provision unconstitutional. The Appellate Division reversed with the comment that “ [t]he record shows, to our minds conclusively, that the prohibition of lay tattooing was an advisable procedure for the security of life and health”. We agree with this determination.
A statute — or an administrative regulation which is legislative in nature—will be upheld as valid if it has a rational basis, that is, if it is not unreasonable, arbitrary or capricious. (See, e.g., United States v. Carolene Prods. Co., 304 U. S. 144, 152 et seq.; Nebbia v. New York, 291 U. S. 502, 525; Chiropractic Assn. of N. Y. v. Hilleboe, 12 N Y 2d 109; Matter of Stracquadanio v. Department of Health, 285 N. Y. 93, 97.) In the case before us, there is no warrant for the charge that the *350 Board of Health acted arbitrarily or capriciously or that the regulation under attack was unreasonable. A review of the evidence given by the defendants’ witnesses thoroughly demonstrates the compelling medical necessity for section 181.15 of the Health Code. Not only was a connection shown between tattooing and hepatitis but the proof convincingly established that rigorous regulation would be ineffective. The police power is exceedingly broad, and the courts will not substitute their judgment of a public health problem for that of eminently qualified physicians in the field of public health. (See, e.g., Chiropractic Assn. of N. Y. v. Hilleboe, 12 N Y 2d 109, 113-114, supra; Matter of Viemeister v. White, 179 N. Y. 235; see, also, Town of Hempstead v. Goldblatt, 9 N Y 2d 101, 105.) As the Supreme Court has expressed it, “ The judicial function is exhausted with the discovery that the relation between means and end is not wholly vain and fanciful, an illusory pretense.” (Williams v. Mayor, 289 U. S. 36, 42; see, also, Matter of Application of Jacobs, 98 N. Y. 98, 115.) In its wisdom, the board in the case before ns decided that the prohibition of lay tattooing was essential for the protection of the public health, and, as stated above, it may not be said that that determination was unreasonable or without justification. It follows, therefore, that the legislation is valid, and this is so notwithstanding that it will occasion the discontinuance of an existing business. (Cf. Ferguson v. Skrupa, 372 U. S. 726, 731-732; Lincoln Union v. Northwestern Co., 335 U. S. 525, 535.)
The further plaint that the enactment of section 181.15 was an unconstitutional exercise of legislative power by the Board of Health, in violation of section 1 of article III of the State Constitution, may be quickly answered. As is apparent, subdivision b of section 558 of the City Charter explicitly authorizes the board ‘ ‘ to add to and to alter, amend or repeal any part of the health code ” and another subdivision (f) empowers the board to “ add, amend and repeal regulations in regard to any matter contained in the health code ”. Any donbt as to the constitutionality of the Charter provision and the board’s power to act under that provision is set at rest by our decisions in People v. Blanchard (288 N. Y. 145, 147) and Matter of Bakers Mut. Ins. Co. (Dept. of Health) (301 N. Y. 21, 26-27). As this court wrote in the Blanchard case, " Within limits that *351 are to be measured by tradition, the State may commit to local governments the power to regulate local affairs. * * * On that basis, the main business of safeguarding the public health has always of necessity been done by local boards or officers through sanitary by-laws or ordinances which have been accorded the force of law ” (288 N. Y., at p. 147).
Nor is there any substance to the plaintiffs’ point that the section is unconstitutional on the ground that the State Legislature had pre-empted the field by enacting provisions which prohibit the tattooing (1) of a child under 16 years of age (Penal Law, § 483-c) or (2) of any person in connection with hazing (Penal Law, § 1030). Neither section was motivated by a desire to regulate the tattooing business for all purposes and, certainly, the Legislature manifested no design to incapacitate the New York City Board of Health from taking steps to prevent the spread of the highly infectious disease of hepatitis. The deduction is clear from section 558 of the City Charter — which empowers the Board of Health to legislate in the field of health generally, including the control of communicable diseases — and from section 228 of the Public Health Law—which specifically exempts New York City from the application of the State’s Sanitary Code — that the Legislature intended the Board of Health to be the sole legislative authority within the City of New York in the field of health regulations as long as those regulations were not inconsistent with or contrary to State laws dealing with the same subject matter. (Cf. People v. Lewis, 295 N. Y. 42; People v. Sampsell, 248 N. Y. 157.) The State has not purported either to license or regulate those engaged in the business of tattooing, nor has the State evidenced any desire or design to occupy the field.
Before concluding, we would say a word about that portion of section 181.15 which prohibits tattooing even by physicians “except * * * for medical purposes”. The suggestion has been made that this exception is not only unconstitutionally vague but impermissibly restrictive — unduly limited, the argument runs, because there can be no valid reason, once the health hazard is overcome by the requirement that a physician must perform the tattooing, to prohibit tattooing by a physician even for purely decorative purposes. We do not, however, reach these questions since the plaintiffs before us, being neither *352 doctors nor prospective tattoo customers, lack the requisite standing to raise them. (See, e.g., Standard Stock Food Co. v. Wright, 225 U. S. 540, 550; Matter of Davis v. Board of Elections, 5 N Y 2d 66, 70; Matter of Guardian Life Ins. Co. v. Chapman, 302 N. Y. 226, 238.)
The order appealed from should be affirmed, without costs.
Chief Judge Desmond and Judges Burke, Soileppi, Bergan and Keating concur with Judge Fuld; Judge Van Voorhis dissents and votes to reverse for the reasons stated in the opinion at Special Term.
Order affirmed.