337 So.2d 388 (1976)
Curtis A. GOLDEN, State Attorney, and E.J. Gibbs, Jr., Tax Collector of Escambia County, Florida, a Political Subdivision of the State of Florida, Appellants,
v.
Doris J. McCARTY, Appellee.
No. 46964.
Supreme Court of Florida.
July 30, 1976.
Rehearing Denied October 11, 1976.
Robert L. Shevin, Atty. Gen., and Bernard S. McLendon, Asst. Atty. Gen., for appellants.
*389 Grover C. Robinson, Jr., Pensacola, for appellee.
ROBERTS, Justice.
We have before us on direct appeal a final judgment of the Circuit Court in and for Escambia County expressly holding Section 877.04, Florida Statutes, as amended by Chapter 69-118, Laws of Florida, to be unconstitutional as it applies to appellee, Doris J. McCarty. We have jurisdiction pursuant to Article V, Section 3(b)(1), Constitution of Florida.
Appellee, as substitute plaintiff for her husband, J.W. McCarty, now deceased,[1] and in her own right sought declaration of her right to continue the practice of the art of tattooing in Escambia County in light of Chapter 69-118, Laws of Florida, and injunctive relief. She and her husband had engaged in the tattoo business in Florida for more than twenty-five years and held the requisite occupational licenses for the operation of such business from the City of Pensacola and Escambia County.
By Chapter 69-118, Laws of Florida, the Legislature in 1969 amended Section 877.04, Florida Statutes, to read in pertinent part, as follows:
"It is unlawful for any person to tattoo the body of any human being; except that tattooing may be performed by a person licensed to practice medicine or dentistry under chapters 458, 459 or 466, Florida Statutes, or by a person under his direction."
This act took effect January 1, 1970. Prior to the aforestated amendment, tattooing was prohibited only to "the body of a human being less than eighteen years of age."
On March 18, 1970, McCarty was notified by the City Treasurer that his municipal occupational license for tattooing had been voided by the City of Pensacola. During 1973, appellee was charged with the offense of tattooing in Escambia County but the charges were nol-prossed by the State Attorney because of unavailability of the prosecuting witness.
In her amended complaint for declaratory and injunctive relief, appellee contended that Section 877.04(1), Florida Statutes, has the legal effect of making it unlawful for her to continue in her chosen profession, that said statutory provision constitutes an unlawful exercise of the State's police power in that it has no reasonable relation to the public health, safety, welfare or morals, and that it violates appellee's constitutional right to equal protection of the law by creating an arbitrary classification of individuals allowed to tattoo.
Finding that Section 877.04, Florida Statutes, as amended is unconstitutional as applied to appellee in that she is prohibited from following her constitutional right to engage in her chosen profession of tattooing, the trial court entered final judgment for appellee and directed that upon tender of the appropriate license fee, the appellee shall be entitled to issuance of a State and County license to engage in the occupation of tattooing. The trial judge determined the statute to be unconstitutional as applied in that it denies appellee her right to equal protection, in that it fails to set forth reasonable standards to be followed in its application, in that it is prohibitive not regulatory, and void of factors actuated by public policy.
Courts have long been committed to the view that if reasonably possible doubts as to the validity of a statute should be resolved in favor of its constitutionality. Every presumption is to be indulged in favor of the validity of a statute and each cause should be considered in light of the principle that the State is the primary judge, and may by statute or other appropriate means, regulate any enterprise, trade, occupation or profession if necessary to protect the public health, safety, welfare or morals. Cf. Gitlow v. People of New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925), Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 315 (1974), Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, *390 10 L.Ed.2d 93 (1963), Newman v. Carson, 280 So.2d 426 (Fla. 1973).
All contract and property rights are held subject to the fair exercise of the power inherent in the State to promote the general welfare of the people through regulations that are reasonably necessary to secure the health, safety, good order, general welfare. "And the enforcement of uncompensated obedience to a regulation established under this power for the public health or safety is not an unconstitutional taking of property without compensation or without due process of law." Atlantic Coast Line R.R. Co. v. City of Goldsboro, 232 U.S. 548, at 558, 34 S.Ct. 364 at 368, 58 L.Ed. 721 (1914). Appellant submits and we agree that the constitutional right of every person to pursue a business, occupation, or profession is subject to the paramount right of government through the police power to impose reasonable restrictions as may be required for the protection of the public. In Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla. 1974), we said:
"Freedom to contract and a citizen's right to pursue a lawful business which are valuable property rights are subject to reasonable restraint in the interest of the public welfare. The right to contract is the general rule and restraint of this right by the police power is the exception to be exercised when necessary to secure the comfort, health, welfare, safety and prosperity of the people. Adams v. Miami Beach Hotel Assoc., 77 So.2d 465 (Fla. 1955); Miami Shores Village v. Wm. N. Brockway Post No. 124 of American Legion, 156 Fla. 673, 24 So.2d 33 (Fla. 1945); Eccles v. Stone, 134 Fla. 113, 183 So. 628 (Fla. 1938); State ex rel. Fulton v. Ives, et al., 123 Fla. 401, 167 So. 394 (Fla. 1936); Holden v. Hardy, 169 U.S. 366, 18 S.Ct. 383, 42 L.Ed. 780."
Cf. McInerney v. Ervin, 46 So.2d 458 (Fla. 1950).
Clearly the subject in question sought to be regulated by the Legislature bears a substantial relationship to the public health of the citizens of this State. Because of the nature of tattooing, we find the restriction that tattooing be done by a person licensed to practice medicine or dentistry or under his direction to be reasonable. Cf. Zabel v. Pinellas County Water and Navigation Control Authority, 171 So.2d 376 (Fla. 1965), Newman v. Carson, 280 So.2d 426 (Fla. 1973). What is harmful or injurious to the public is for the Legislature to decide and courts should not substitute their judgment therefor. Cf. Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963), Pepper v. Pepper, 66 So.2d 280 (Fla. 1953), City of Jacksonville v. Bowden, 167 Fla. 181, 64 So. 769 (1914).
Tattooing consists of puncturing the skin in the pattern desired and rubbing in coloring material so that the pattern is indelibly fixed. Encyclopedia Brittanica, Volume 16. Cf. Ormsby and Montgomery, Diseases of the Skin, Eighth Edition, 9 Proof of Facts 391. It is a matter of common knowledge that in making a tattoo, there are many entries by way of needle into the skin of a human body opening the way for infection and health impairment.
Relative to the relationship of regulation of the business of tattooing and the public health, the Supreme Court of New York, in upholding the constitutionality of Section 181.15 of the New York City Health Code making it unlawful for any person to tattoo a human being, with an exception being made for physician acting for medical purposes, declared:
"The record shows, to our minds conclusively, that the prohibition of lay tattooing was an advisable procedure for the security of life and health. It was established that hepatitis, a serious disease of the blood for which there is no known cure, is caused by a virus. This virus, which lives in the blood of infected persons, is transmitted to the healthy by injection into their blood or tissue of the blood or blood products of the infected. Such transmissions occur to persons who have been tattooed seven times more frequently than they occur in persons who have not been tattooed. Concededly, restricting *391 the spread of hepatitis is a proper subject of Health Code regulations. And it would appear to be uncontradictable that tattooing is a source of the spread of this dread disease. It would therefore follow indisputably that the control of tattooing comes well within the field of securing the health of the community."
Grossman v. Baumgartner, 22 A.D.2d 100, 254 N.Y.S.2d 335, affirmed 17 N.Y.2d 345, 271 N.Y.S.2d 195, 218 N.E.2d 259 (1966).
It is our opinion and we hold that the method of tattooing is sufficient to bring it within the range of things directly affecting the public health and falls within the scope of the police power and that the subject regulation constitutes a reasonable restriction on the art of tattooing for the benefit of public health.
The act specifies that tattooing be performed by a person licensed to practice medicine or dentistry under Chapters 458, 459 or 466, Florida Statutes, or by one under his direction. This language is neither void nor vague but rather is susceptible to the understanding of a reasonable person. The statute requires that tattoo artists work subject to the direction of a licensed physician or dentist as defined by the act.
The equal protection guarantees of the state and federal constitutions are not violated by Section 877.04, Florida Statutes. Cf. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), Battaglia v. Adams, 164 So.2d 195 (Fla. 1964), Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla. 1974).
Accordingly, for the aforestated reasons, we find Section 877.04 Florida Statutes, to be constitutionally valid. The judgment is reversed and the cause is remanded for further proceedings consistent herewith.
It is so ordered.
OVERTON, C.J., BOYD and ENGLAND, JJ., concur.
SUNDBERG, J., dissents with an opinion.
ADKINS and HATCHETT, JJ., dissent and concur with SUNDBERG, J.
SUNDBERG, Justice (dissenting).
I must respectfully dissent from the majority opinion. Although I find no fault with the principle that the Legislature in the exercise of the police power may regulate reasonably the occupation of tattooing in furtherance of the public health, I believe that the method of regulation in Section 877.04, Florida Statutes (1975), is constitutionally impermissible. In my judgment the classification contained therein is unreasonable. In order for a statutory classification not to deny equal protection, it must rest on some difference that bears a just and reasonable relation to the statute in respect to which the classification is proposed. McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). There appears to me no reasonable relation between health hazards associated with tattooing and the limitation of its performance to those licensed to practice medicine or dentistry or to one under the direction of those so licensed. Granting that my experience with tattooing is limited, I nevertheless think we may take judicial knowledge of the fact that doctors and dentists simply do not practice that art, and therefore the statutory classification plainly results in an absolute prohibition. It may be that the public health requires such an absolute proscription and that the Legislature may well be authorized to completely prohibit the practice. However, that body may not do so under the guise of regulation. As stated by Justice Barns in his concurring opinion in Liquor Store v. Continental Distilling Corp., 40 So.2d 371, 376 at 385 (Fla. 1949):
"To be `equal before the law' does not preclude the state from resorting to classification, provided the classification is reasonable, not arbitrary, and rests on some ground of difference having a fair and substantial relation to the object of the legislation. The classification, in order to avoid the constitutional mandate, must be founded upon pertinent and rational *392 basis and not upon a capricious and unreasonable basis."
I would affirm the trial court.
ADKINS and HATCHETT, JJ., concur.
Rehearing denied;
OVERTON, C.J., ROBERTS, BOYD, ENGLAND, and HATCHETT, JJ., concur.
ADKINS and SUNDBERG, JJ., dissent.
NOTES
[1] After commencement of this suit, J.W. McCarty died September 18, 1971, and appellee filed a suggestion of death of the original plaintiff and substitution of herself as plaintiff.