# FLORIDA TEACHING PROFESSION, etc., et al. v. TURLINGTON, etc., et al.

Case No. 85-0397

Second Judicial Circuit, Leon County

May 20, 1985

## APPEARANCES OF COUNSEL

**Robert McKee** and **Mark F. Kelly** for plaintiff.

**Ronald G. Meyer** for plaintiff.

**Judith A. Brechner,** State Board of Education, for defendant.

**Leonard A. Carson** and **Richard T. Doneland, Jr.,** for defendant.

**B. Edwin Johnson,** attorney, for School Board.

## OPINION OF THE COURT

CHARLES E. MINER, JR., Circuit Judge.

Plaintiffs here seek a judicial declaration that Secs. 231.532 and 231.533, F.S. are unconstitutional. The former section relates to what has been called the "Merit Schools Program" and the latter makes provision for the "State Master Teacher Program". Plaintiffs are employee organizations which collectively bargain with school boards

on behalf of instructional employees and two classroom teachers, one from Tallahassee and the other from Pensacola. Defendants are various officials of the State of Florida responsible for the administration of public education.

At final hearing, the District School Board of Pinellas County, Florida, sought to intervene as a party plaintiff. This intervention was opposed by defendants on the basis that a school board lacks standing to argue the unconstitutionality of statutes it is charged with enforcing. *Department of Revenue v. Markham*, 396 So.2d 1120 (Fla. 1981). The Court took this Motion under advisement and permitted the attorney for the School Board to participate in the hearing. Upon reflection, this Motion to Intervene is hereby denied.

Based on the pleadings and on testimony of witnesses and documentary evidence presented during the final hearing, the Court finds as follows:

Sec. 231.532, F.S., the so-called "Merit Schools Program" took effect in July of 1984. This program authorizes state funding for voluntary, locally-negotiated plans designed to increase the performance of students and to provide economic incentives for teachers and other school personnel who meet specified statutory criteria. In order to be eligible for state funding, each school district plan is required to be of no more than one year duration, cover the 1984-85 school year, be voluntary and non-discriminatory, and provide for the expenditure of no less than 50 percent of the funds allocated to it on the basis of "employment at a meritorious school." Sec. 231.532(2)(a), (3)(f), F.S. The statute authorizes each district to devise a plan which devotes its remaining allocation of funds to employee incentive awards based on one or more specified optional categories, including outstanding attendance, employment in a critical teachers shortage area or school site, successful completion of in-field graduate course work with a grade of "B" or better, superior evaluation scores, or other related categories devised at the local level. Each plan is also required to provide for recognition of student progress at "meritorious schools." Sec. 231.532(3)(f)(2), F.S.

The statute requires that all plans be subject to collective bargaining negotiations and specifically provides that implementation and state funding of a plan is contingent upon its ratifications by both the District School Board and the public employees involved.

The statutory section in question also contains detailed criteria which govern the selection process for "meritorious schools." It requires that a "meritorious school" be selected in part by being in the upper quartile of District Schools in terms of its relative or expected

22

rate of student gain as measured by standardized tests of verbal and quantitative achievement. Where there are too few district schools to establish a meaningful "upper quartile", the statute authorizes the determination of a school's "meritorious" status in part by the degree to which actual aggregate student scores on standardized achievement tests exceed predicted scores.

In excess of nineteen million dollars was appropriated to this program for disbursement by eligible school districts under plans to be certified by the Department of Education before January 1, 1985, as being in compliance with statutory requirements.

The Department of Education, the reviewing authority, received proposed plans from thirty-three school districts prior to the October 1, 1984, cutoff date. None of these plans was certified by the Department of Education as originally submitted. However, none was rejected outright by the Department. Each plan was reviewed by separate committees of Department of Education officials responsible for assessing the compliance of each proposed plan with specific aspects of the statutory standards contained in the enactment.

Representatives of the Pinellas Classroom Teachers Association (PCTA) and the District School Board of Pinellas County reached agreement on a proposed Pinellas District Merit Schools plan in mid-September of 1984. This plan was ratified by the parties and submitted to the Department of Education for review in late September. Following discussions of the Pinellas plan between state education officials and representatives from Pinellas County, a revised plan was submitted and certified by Commissioner Ralph Turlington prior to January 1, 1985. This certificate of compliance made the Pinellas County School District eligible to receive its pro-rata share of the funds appropriated for this program in October, 1985, when awards are due.

The State "Master Teacher Program" created by Sec. 231.533, F.S. also took effect in July of 1984. This program authorizes the payment of a recognitional incentive award of not less than three-thousand dollars directly from the State Comptroller's office to superior teachers who voluntarily document their fulfillment of statutory eligibility criteria. A teacher may participate in the program as an associate master teacher or as a master teacher. Because three years of associate master teacher status is required for master teacher eligibility, and this is the first year of the Program, there are no eligible master teacher candidates.

To qualify as an associate master teacher eligible for an award, a teacher must satisfy three criteria representing experience, a knowledge base, and demonstrated superior performance.

23

Under the statutory section in question the State Board of Education is directed to adopt rules for this program. Pursuant to this directive, the State Board of Education adopted Rule 6A-4.46 which sets forth extensive criteria governing the performance evaluations and subject area examinations required by the Program. This Rule also prescribes that acceptable subject area examinations for certification as associate master teachers can be either a Specialty Area Test of a National Teacher Examination or a subject area examination constructed by the Institute for Instructional Research and Practice and Student Education Evaluation and Performance. All subject area examinations must be aproved by the State Board of Education. Currently there are subject area tests available to at least 80% of the potential candidates for the associate master teacher award, which tests also cover all primary subject areas. More examinations are presently under development. It is noted that there are no subject area examinations in certain instructional areas at this time.

Approximately 35,000 of Florida's teachers applied to participate in this Program by the application deadline and on or about June 1, 1985, the Officer of Teacher Certification is required to notify the Commissioner of Education of the names of individuals who qualify as associate master teachers. The Commissioner will then certify the names of the teachers so designated to the State Comptroller, who will draw a warrant payable directly to each teacher for the first fifteen hundred dollar installment of the $3,000 incentive award. The first installment is required to be paid in June of 1985 and the second in September, 1985.

Plaintiffs challenge the constitutionality of these statutes on different constitutional theories, four of which in the Court's view do not represent serious claims and will be summarily dismissed before attention is directed to the more involved claims.

This Court finds no basis for a conclusion that the "Merit Schools" statute actually or theoretically threatens the departure from the uniform system of free public schools mandated by Article 9, Sec. 1, of the Florida Constitution. Although Plaintiffs argued that discrepancies in pupil funding might lead to "elite schools", no evidence to support this argument was presented. The Court finds that all district "Merit Schools" plans are voluntary and are governed by uniform statutory and rule standards. Thus, the system remains uniform, even if any individual district voluntarily declines to participate in this program. *Department of Education v. School Board of Collier County*, 393 So.2d 1010 (Fla. 1981); *School Board of Escambia County v. State*, 353 So.2d 834 (Fla. 1977).

24

The Court is likewise not persuaded that the challenged statutes infringe upon the constitutional authority of district school boards under Article 9 of the Florida Constitution. The preeminent authority of the Legislature over public education was recognized by this Court's previous opinion regarding the constitutionality of the Master Teacher Program. *United Teachers of Dade, et al v. Dade County School Board*, 11 Fla. Supp.2d 42 (Second Judicial Circuit, 1985). The duties of a district school board are defined by statutes enacted by the Legislature and the challenged statute merely exemplifies additional duties legitimately imposed upon school boards by the Legislature in its supervision of public education in this State.

The Court also rejects the claim that the Merit Schools statute is a legislative impairment of contracts proscribed Article I, Sec. 10 of the Florida Constitution and Article I, Sec. 10 of the United States Constitution. This statutory section clearly establishes that the implementation of a negotiated program is contingent upon Department of Education approval of the plan. It is well settled in the law that the contract impairment clause only forbids legislative alteration of pre-existing contractual rights and that private parties cannot bind the sovereign's authority by contract. *Golden v. McCarty*, 337 So.2d 388 (Fla. 1976); *U.S. Fidelity and Guaranty Corp. v. Department of Insurance*, 435 So.2d 1355 (Fla. 1984).

Next, Plaintiffs contend that the Merit Schools statute contravenes teacher collective bargaining rights secured under Article I, Sec. 6 of the Florida Constitution. This Court previously upheld the constitutionality of the State Master Teacher Program against a similar argument. *United Teachers of Dade, et al. v. Dade County School Board, et al., supra.* The Court remains unable to see how teacher bargaining rights are abridged by Sec. 231.532, F.S., which makes collective bargaining mandatory concerning merit schools plans and makes ratification by teachers a condition precedent to Departmment of Education approval of such plans.

Plaintiffs contend that the detailed Merit Schools Plan criteria established by statute "over regulate" mandatory bargaining. They also argue that Department of Education plan review authority creates a system under which a third party may arbitrarily reject bargained plans for no good reason. These arguments are not persuasive. To the contrary, the Court finds neither the statutory criteria nor the Department of Education's review authority constitute "over regulation".

The Court has carefully considered the issues raised by the two remaining constitutional claims of the Plaintiffs. First, they argue that

25

both statutes represent an unlawful, standardless delegation of legislative authority to the Department of Education in violation of the principle of separation of powers. Secondly, they argue that both statutes create unreasonable and arbitrary distinctions by which the distribution of public funds is determined, thus denying to Plaintiffs the equal protection of the law guaranteed by the Florida and U.S. Constitutions. Further, as to the Merit Schools Program, Plaintiffs contend that rewarding teachers based on increased student test scores is irrational because they see no relationship between effective teaching and student test scores. As to the Master Teacher Program, Plaintiffs contend that, as implemented by the Department of Education, the Master Teacher statute fails to permit all candidates to compete equally for the associate master teacher incentive award, primarily because subject area examinations do not exist in all disciplines for all teachers.

The constitutional prohibition against the unlawful delegation of legislative authority is designed to prevent the exercise by any one but the legislature of the sovereign power to enact laws. It is also designed to safeguard against the exercise of unrestricted discretion in the application of the law by an administrative agency charged with this enforcement. *League of Mercy Association v. Walt*, 376 So.2d 892 (Fla. 1st DCA 1979). This doctrine does not preclude all administrative discretion as to a statute, provided that reasonable guidance is contained in the statute under attack. *Department of Administration v. Nelson*, 424 So.2d 852 (Fla. 1st DCA 1982).

Thus, the question for the Court in this context is whether the challenged statutes permit the unrestricted exercise of discretion by officials of the Department of Education. The Court concludes they do not. The statutes confer permissible administrative discretion on the Department of Education officials to administer new and innovative programs, but they do not enable those officials to "say what the law is." *Brewer v. Department of Insurance*, 392 So.2d 593 (Fla. 1st DCA 1981).

The initial Merit Schools Plan sanctioned by Plaintiff Pinellas Classroom Teacher Association is presented as a primary example of what Plaintiffs believe to be unlawfully exercised discretion. The Court is not persuaded that the initial failure by the Department of Education to approve this plan was in any way unlawful. Indeed, the plan as originally submitted did not require student test score improvement as a mandatory criterion for selection. This was required by statute. Too, it must be noted that the Merit Schools statute necessarily permitted a range of plan options to be negotiated at the local level. It seems somewhat ironic that the range of options specified in the statute is

26

argued to confer unconstitutional discretion on the Department of Education but at the same time it is argued that the Merit Schools Program "chokes" the bargaining process. Quite obviously, a balance must be struck and the Court finds that the balance so struck is appropriate.

As to the Master Teacher Program, Plaintiffs urge that the ability of principals to confer extra evaluation points on teachers represents unlawful discretion. This argument, however, seems to overlook that the "extra points" available under the statute may only be recommended by the principal. Also overlooked is the fact that candidates who are denied associate master teacher designation may also obtain review of such decision under Sec. 120.57, F.S. The safeguards contained in the statute and in the aforestated Rule, in the Court's view, adequately protect candidates for associate master teacher designation from the arbitrary exercise of discretion.

After hearing argument, the Court is of the view that Plaintiffs' real objection to the Merit Schools Program is not the lack of statutory guidelines but rather to the particular guidelines contained in Sec. 231.532, F.S. They describe as "freakish" the selection of meritorious schools and the payment of funds to teachers based upon increases in student test scores. Their equal protection claim seems aimed at the fundamental premise of the legislation, i.e. that voluntary economic incentives should be available to school board personnel who assist in improvement of schools· and student performance. By way of contrast, the equal protection challenge to the Master Teacher Program rests on the acknowledged fact that subject area examinations have not been approved for all instructional areas in which associate master teacher candidates serve. As a result, Plaintiffs urge arbitrary classification of teachers according to subject areas renders equal competition for the associate master teacher designation impossible. In a word, Plaintiffs claim that the Merit Schools statute is a facial denial of equal protection but claim that the Master Techer statute only denies equal protection in its application. However, the same legal principles govern both contentions.

In determining whether a legislatively established classification offends notions of equal protection, it is not for a court to second guess the wisdom of the enactment under challenge. *U.S. Railroad Retirement Board v. Fritz*, 449 U.S. 166, 10 S.Ct. 453 (1980); *School Board of Escambia County v. State*, 353 So.2d 834 (Fla. 1977). A legislative classification will be upheld if it has a "rational basis", that is, if it has a reasonable relationship to the purpose to be served by the statute. *Sasso v. Ram Property Mgt. Co.*, 431 So.2d 204 (Fla. 1st DCA 1983).

**27**

The burden of showing state action to be without any rational basis is placed upon the individual assailing the classification scheme. As in all constitutional challenges, the invalidity of a statute must be made to appear beyond a reasonable doubt. *ABA Industries, Inc. v. Pinellas Park*, 366 So.2d 761 (Fla. 1979).

No more than a casual reading of the legislative purpose undergirding the challenged statutes will reveal what is intended by each. The Merit Schools statute is intended "to increase the performance of public school students and to provide economic incentives to instructional personnel, and other personnel—based upon approved district incentive plans." The Master Teacher Program is intended "to recognize superior ability among Florida's instructional personnel and to provide an economic incentive to such personnel to continue in public school instruction." The Court is of the view that Plaintiffs have failed to show that these stated legislative purposes exceed legislative authority or are otherwise illegitimate. Given that the legislature's ends to be achieved are both laudable and legitimate, the only question remaining is whether the classifications selected by the Legislature rationally advance those objectives. Plaintiffs case against the Merit Schools statute hinges on their belief that teacher performance bears little or no relationship to enhanced student performance or to the improvement of schools. This argument suggests that better teaching does not promote better learning by students or, worse, that someway, somehow teachers make little or no difference in the outcome of the educational process. As both a former teacher and more than a casual observer of the Florida educational scene over the last 20 years, the Court finds it difficult to accept this proposition. Call it naivete, call it looking at the real world through rose colored glasses, it is hard to subscribe to the notion that student progress and attainment will ever be as well served by computers and television sets as by the love, knowledge and understanding of a devoted and dedicated teacher.

Moreover, the Court does not accept that the only intent of the Merit Schools Program is to pay teachers exclusively on the basis of increases in student test scores. To the contrary, as the approved Pinellas County Merit Schools Plan demonstrates, *no* money need be devoted to teachers; the issue of whether teacher pay can properly be conditioned on test score performance is really not the point. Moreover, the statute contemplates that up to 505 of a district's merit schools money could be devoted, at the option of the negotiating parties, to other specified incentives which have nothing whatever to do with test scores.

The final issue to be addressed is whether the Master Teacher

28

Program is constitutionally objectionable because some potential candidates are not presently able to qualify for the program through a subject area examination but, instead are required to possess a master's degree. While subject matter tests have been approved for all the basic subject areas encompassing some 805 of Florida's teachers, no approved test exists in other subject areas. Even as this Order is being written additional tests covering other subject areas are being developed and will be implemented as soon as possible. The fact that subject area examinations do not now exist in some areas is not the result of a deliberate classification by the Legislature. Rather, it is purely a practical imperfection resulting from the short time the Program has existed. Neither the Merit Schools statute or the Master Teacher statute is perfect. The glitches in both have been widely chronicled in the print and broadcast media. It is, however, not the function of this Court to stifle legitimate legislative innovation or judicially rewrite legislative enactments.

Plaintiffs do not contend that it is irrational to identify and provide incentives to superior teachers. In concept, the Master Teacher Program like the Master Schools Program represents a bold initiative—one that seeks to reward superior experience, knowledge and teaching performance. That these programs may not to date have proven all that one might have hoped, the Court expresses the view that Department of Education officials responsible for fleshing out these programs have achieved rather remarkable success in carrying out expressed legislative intent in a short period of time.

That subject area examinations do not now exist for the more restricted educational assignments is not constitutionally fatal. The lack of subject area tests, standing alone, does not preclude any teacher from program candidacy. Any teacher who has a Master's Degree may qualify.

In sum, Plaintiffs have not discharged their burden demonstrating beyond a reasonable doubt that the challenged statutes offend either the Florida or the Federal Constitution. They are imperfect to be 'sure. More fine tuning will be required before results can be evaluated. There are now those and there will be others who question the wisdom of these programs but, that is a matter properly taken up with the Legislature and not with the judiciary.

ACCORDINGLY, it is DECLARED, ADJUDGED and ORDERED that Secs. 231.532 and 231.533, F.S. do not violate any provision of the Constitution of Florida or the Constitution of the United States.