**STATE of Indiana and State of Indiana ex rel. MEDICAL LICENSING BOARD of INDIANA, Plaintiffs-Appellants,**

v.

**Kevin BRADY, individually and doing business as All American Tattoo, an unincorporated Indiana business, Defendant-Appellee.**

No. 1–985A223.

Court of Appeals of Indiana, First District.

April 28, 1986.

Linley E. Pearson, Atty. Gen., Janet A. McSharar, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiffs-appellants.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The State of Indiana and the Medical Licensing Board of Indiana (referred to collectively as the Board) appeal from an order of the Monroe Circuit Court denying the Board's Verified Petition for Injunction and granting appellee's request for an injunction against the Board. We reverse.

## FACTS

The essential facts are not in dispute. Kevin Brady (Brady) is a tattoo artist who owned and operated the All American Tattoo Studio in Bloomington, Indiana. Sometime in late 1984, Brady began advertising his services touting himself as the "Tattoer of the Stars." As the Board's brief investigation revealed, Brady's advertising campaign was successful.

On March 20, 1985, the Board filed a Verified Petition for Injunction alleging that, by tattooing individuals, Brady was engaged in the unlawful practice of medicine or osteopathic medicine in violation of Indiana Code section 25–22.5–8–1. Brady subsequently answered admitting that he was engaged in tattooing and that he was not licensed to practice medicine in the State of Indiana. He averred, however, that tattooing was not the practice of medicine. In addition, Brady sought, under 42 U.S.C. § 1983, to enjoin the Board from enforcing Indiana Code section 25–22.5–1–1.1 so as to prohibit tattooing as an art form, claiming that such action was a violation of his First Amendment rights.

On June 4, 1985, the trial court entered specific findings of fact and conclusions of law. Interpreting the statutory definition of the "practice of medicine" contained in I.C. 25–22.5–1–1.1, the trial court concluded that tattooing, as an art form, was not the practice of medicine. Consequently, it denied the Board's petition and granted Brady's. The Board then perfected this appeal.

## ISSUES

This appeal presents two issues for our review.

1. Whether the statutory definition of the practice of medicine encompasses the tattooing of individuals solely for artistic purposes.

2. Whether a statutory prohibition against the unlicensed tattooing of individuals constitutes an unconstitutional infringement on First Amendment rights

when such tattooing is done solely for artistic purposes.

## DISCUSSION AND DECISION

At the outset, we note that Brady has failed to file an appellate brief with this court. Therefore, even though the Board is appealing from a negative judgment, *see State ex rel. Medical Licensing Bd. v. Stetina* (1985), Ind.App., 477 N.E.2d 322, 326, *trans. denied; Burras v. Canal Construction and Design Co.* (1984), Ind.App., 470 N.E.2d 1362, 1368, we will reverse if it succeeds in making a prima facie showing of error. *S.M.V. v. Littlepage* (1983), Ind. App., 443 N.E.2d 103, 105, *trans. denied.* This the Board has done.

*Issue One*

The present version of the Indiana Medical Practice Act provides the Board with two options to combat the unlawful practice of medicine. It may either institute a criminal prosecution pursuant to Indiana Code section 25–22.5–8–2,[1] or seek an injunctive remedy under Indiana Code section 25–22.5–8–4.[2] *Stetina*, at 328; *Dean v. State ex rel. Board of Medical Registration and Examination* (1954), 233 Ind. 25, 30, 116 N.E.2d 503, 506. In this case, the Board chose to file a verified petition for an injunction prohibiting Brady from engaging in tattooing in the future.

The Board was required to establish only two elements in order to prevail on its petition. It had to demonstrate that, by tattooing individuals, Brady was engaged in the practice of medicine and that he was not licensed to do so. *Stetina*, at 326; *Dean*, at 29–30, 116 N.E.2d at 505–06,

quoting *State ex rel. Bowers v. Moser* (1944), 222 Ind. 354, 358–59, 53 N.E.2d 893, 894 (interpreting prior statutory provision).[3] Brady admitted that he did not possess a license to practice medicine. Thus, we must determine whether tattooing constitutes the practice of medicine.

■ The state has, through the legislature, broad powers to regulate in this area. This authority stems directly from the state's police power. *Ice v. State ex rel. Indiana State Board of Dental Examiners* (1959), 240 Ind. 82, 84–85, 161 N.E.2d 171, 172; *Dean*, at 30, 116 N.E.2d at 506. As a necessary incidence to this power, the state has the authority, through appropriate legislation, to define what conduct will constitute the practice of medicine. *Dean*, at 31, 116 N.E.2d at 506. Furthermore, the legislature's judgment as to what the practice of medicine entails will not be disturbed by the judiciary absent some constitutional infirmity. *See Ice*, at 85, 161 N.E.2d at 173.

■ The General Assembly has defined the practice of medicine quite specifically. Indiana Code section 25–22.5–1–1.1 (Burns 1982), the provision in effect at the time this cause of action arose, states in relevant part:

"(a) 'Practice of medicine or osteopathic medicine' means any one [1] or a combination of the following:

(1) Holding oneself out to the public as being engaged in the diagnosis, treatment, correction or prevention of any disease, ailment, defect, injury, infirmity, deformity, pain or other condition of hu-

1. Indiana Code section 25–22.5–8–2 (Burns 1982) states: "A person who violates this article by unlawfully practicing medicine or osteopathic medicine commits a class C felony."

2. Indiana Code section 25–22.5–8–4 (Burns 1982) states:
   "Injunctions.—The attorney general, prosecuting attorney, the board or any citizen of any county where any person engages in the practice of medicine or osteopathic medicine without a license or a permit to do so, may, according to the laws of Indiana governing injunctions, maintain an action in the name of the state of Indiana to enjoin the person from en-

gaging in the practice of medicine or osteopathic medicine. In charging any person in an affidavit, information or indictment, with a violation of this law by practicing medicine or osteopathic medicine without a license or permit, it is sufficient to charge that he did, upon a certain day and in a certain county, engage in the unlawful practice of medicine or osteopathic medicine and that he did not have any license or permit to do so. No further or more particular fact need be averred concerning the matter."

3. *See also* Ind. Code 25–22.5–8–4, *supra* note 2.

man beings, or the suggestion, recommendation or prescription or administration of any form of treatment, without limitation, *or the performing of any kind of surgical operation upon a human being, including tattooing, or the penetration of the skin or body orifice by any means, for the intended palliation, relief, cure or prevention of any physical, mental or functional ailment or defect of any person;" (Emphasis added)*

Ind. Code § 25–22.5–1–1.1(a)(1) (Burns 1982).[4] The trial court properly concluded that this provision is ambiguous to some extent. Apparently, the trial court agreed with Brady's arguments and concluded that the phrase "for the intended palliation, relief, cure or prevention of any physical, mental or functional ailment or defect of any person" modified the entire paragraph and not just "the penetration of the skin or body orifice by any means" as the Board had argued. The trial court held, therefore, that:

"A practical construction of the statute in question is that the legislature of this state intended that any person engaging in the procedure of tattooing as a medical procedure, or medical operation, be licensed to do so, and that such licensing not be required by those who practice tattooing as an art form at the request of their customers."

Record at 194. We believe, however, that the interpretation argued by the Board, which would define all tattooing, regardless of the purpose, to constitute the practice of medicine, to be the appropriate one.

When construing a statutory provision, this court follows certain well known maxims. We will examine the act as a whole rather than concentrating exclusively on isolated phrases. *Gebhard v. State* (1985), Ind.App., 484 N.E.2d 45, 47; *Daugherty v. State* (1984), Ind.App., 466 N.E.2d 46, 52, *trans. denied.* The words employed by the legislature will be given their ordinary and usual meanings unless a contrary result is demanded by the statute itself. *Herbert v. State* (1985), Ind.App., 484 N.E.2d 68, 70; *Gebhard*, at 47. We will also presume that the legislature intended to have its enactments interpreted and applied in a logical manner consistent with the statute's underlying goals. *Detterline v. Bonaventura* (1984), Ind.App., 465 N.E.2d 215, 218, *trans. denied.* Our ultimate goal, however, is to ascertain and then give effect to the legislature's intent. *Herbert*, at 70; *Gebhard*, at 47; *Daugherty*, at 52; *Detterline*, at 218; *Brook v. State* (1983), Ind. App., 448 N.E.2d 1249, 1251.

Indiana Code section 25–22.5–1–1.1(a)(1) (Burns 1982), properly interpreted, defines all tattooing, for whatever purpose, as the practice of medicine. This interpretation is supported by several analyses.

First, if the phrase "for the intended palliation, relief, cure or prevention of any physical, mental or functional ailment or defect of any person" were intended to modify the entire paragraph, as Brady argued below, it would be redundant and, in some aspects, clearly nonsensical. The phrase certainly modifies "the penetration of the skin or body orifice." Without such a restriction, the scope of this definitional provision would indeed be wide ranging. However, it cannot be argued seriously that the phrase applies to modify any other section of the provision except for "surgi-

---

**4.** The present version of Ind. Code § 25–22.5–1–1.1(a)(1), which is nearly identical in substance to the provision in question here, states:

"(a) 'Practice of medicine or osteopathic medicine' means any one (1) or a combination of the following:

(1) Holding oneself out to the public as being engaged in:

(A) the diagnosis, treatment, correction, or prevention of any disease, ailment, defect, injury, infirmity, deformity, pain, or other condition of human beings;

(B) the suggestion, recommendation or prescription or administration of any form of treatment, without limitation;

(C) the performing of any kind of surgical operation upon a human being, including tattooing, or the penetration of the skin or body orifice by any means, for the intended palliation, relief, cure; or

(D) the prevention of any physical, mental, or functional ailment or defect of any person."

cal operation."[5] Thus, we concentrate our discussion on that aspect of the statute.

Surgery has been variously defined as:

"a branch of medicine that is concerned with diseases and conditions requiring or amenable to operative or manual procedures."

Webster's Third New International Dictionary 2301 (1976).

"... that branch of medical science which treats of mechanical or operative measures for healing diseases, deformities, or injuries."

Black's Law Dictionary 1293 (5th ed. 1979).

"The branch of medicine that is concerned with therapy of diseases or injuries by operation or manipulation."

Stedman's Medical Dictionary 1370 (4th ed. 1976).

"The branch of medicine dealing with diseases requiring operative procedure, including manipulation."

Blakiston's New Gould Medical Dictionary 1009 (1st ed. 1950). Therefore, if "surgical operation" is ascribed its usual and ordinary meaning, application of the modifying phrase would result in an obvious redundancy. This, the legislature certainly would not have intended. Under our statute, then, "any kind of surgical operation" will constitute the practice of medicine. Furthermore, since all tattooing, for whatever purpose, has been expressly defined by the legislature as a "surgical operation" it too will constitute the practice of medicine under Ind. Code § 25–22.5–1–1.1(a)(1).

The second analysis supportive of this interpretation is derivative of the first. If we were to read Ind. Code § 25–22.5–1–1.1(a)(1) as urged by Brady, the legislature's addition of "including tattooing" in 1977, would have no purpose. Clearly, if tattooing is performed "for the intended palliation, relief, cure or prevention of any physical, mental or functional ailment or defect of any person," it constitutes the practice of medicine. This would be true, however,

even without the amendatory language "including tattooing." We will not accept an interpretation of a legislative act which renders part of that act meaningless.

Next, we note that the trial court rejected the Board's interpretation, in part, because it would restrict such common cosmetic procedures as ear piercing to those licensed to practice medicine. Ear piercing is not, however, a surgical operation as that term is commonly understood. *Hicks v. Arkansas State Medical Board* (1976), 260 Ark. 31, 36, 537 S.W.2d 794, 796. Consequently, unless ear piercing is performed "for the intended palliation, relief, cure or prevention of any physical, mental or functional ailment or defect of any person" it will not constitute the practice of medicine.

Finally, the interpretation proposed by Brady and accepted by the trial court could lead to anomalous results. Such an interpretation would permit unlicensed individuals to perform surgery so long as it was not performed "for the intended palliation, relief, cure or prevention of any physical, mental or functional ailment or defect of any person." Some common plastic surgery procedures would not then constitute the practice of medicine. We cannot imagine that the legislature would have intended such results when it enacted Ind.Code § 25–22.5–1–1.1(a)(1).

We must conclude that the proper interpretation of this statutory provision is that urged by the Board. In 1977, when the legislature amended Ind.Code § 25–22.5–1–1.1(a)(1), adding "including tattooing," it intended to restrict all tattooing, for whatever purpose, to those individuals licensed to practice medicine. We agree with the trial court that the primary purpose of the Medical Practice Act is "to protect people afflicted with diseases or illness in any degree from their own credulity." *Dean*, at 28, 116 N.E.2d at 505. It is equally clear, however, from a reading of the entire act, that the legislature intended to restrict the performance of certain procedures,

---

**5.** This interpretation is further supported by the legislature's 1985 amendments to Ind. Code § 25–22.5–1–1.1(a)(1). *See supra* note 4.

which entail a risk of infection or communication of disease, to those best trained to prevent such from occurring. The legislature has expressly indicated that tattooing is one of those procedures. We will not second guess that judgment. Brady was engaged in the practice of medicine without a license to do so.

*Issue Two*

Having determined that Brady was engaged in the unlawful practice of medicine, we must reach a second issue. Brady claimed below that enforcement of Ind. Code § 25–22.5–1–1.1(a)(1) in the manner proposed by the Board would infringe upon his First Amendment rights. We disagree.

■ The First Amendment protects a wide range of expression whether it takes the form of pure speech or conduct which is sufficiently communicative to qualify as symbolic speech. *Spence v. Washington* (1974), 418 U.S. 405, 410–11, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842, 846–47; *United States v. O'Brien* (1968), 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672, 679; *Yurkew v. Sinclair* (D.Minn.1980), 495 F.Supp. 1248, 1253. However, all courts presented with this issue have found that the process of tattooing is neither speech nor even symbolic speech. *Yurkew*, at 1253; *People v. O'Sullivan* (1978), 96 Misc.2d 52, 53, 409 N.Y.S.2d 332, 333. The Federal District Court for the District of Minnesota, in an extensive and well reasoned discussion of this issue, concluded that: "Wherever the amorphous line of demarcation exists between protected and unprotected conduct for First Amendment purposes, the Court is convinced that tattooing falls on the unprotected side of the line." *Yurkew*, at 1253. These cases are persuasive.

■ Since no First Amendment rights are implicated here, it is necessary for us to determine only whether a rational basis existed for the legislature's inclusion of tattooing in the statutory definition of the practice of medicine. Tattooing is a process by which dyes are injected under the outer layers of skin, through needles, to form a virtually indelible design. *Yurkew,*

at 1252; *Golden v. McCarty* (1976), Fla., 337 So.2d 388, 390. As with any invasive procedure, there exists a very real risk of infection or transmission of communicable diseases. *Id.* Of particular concern is the potential for transmission of infectious or serum hepatitis. *Yurkew*, at 1252; *Grossman v. Baumgartner* (1964), 22 A.D.2d 100, 254 N.Y.S.2d 335, 337, *aff'd* (1966), 17 N.Y.2d 345, 218 N.E.2d 259, 271 N.Y.S.2d 195. Thus, although Brady employed extensive sterilization procedures in his business, the legislature could have reasonably concluded that, on the whole, it was more prudent to restrict tattooing to those individuals best prepared to guard against its potential dangers. In this regard then, Ind.Code § 25–22.5–1–1.1(a)(1) is not unconstitutionally arbitrary or capricious.

The judgment of the trial court is reversed and this cause is remanded with instructions that the trial court enter judgment in favor of the Board on its verified petition.

NEAL, J., concurs.

ROBERTSON, P.J., dissents with separate opinion.

ROBERTSON, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion.

It is only where a statute is ambiguous or more than one construction is possible that the reviewing court will construe that statute. *Johnson v. LaPorte Bank & Trust Co.*, (1984) Ind.App., 470 N.E.2d 350. Where a statute is clear and unambiguous, the court on review has the duty to give effect to the plain meaning of that statute. *Indiana Collectors v. Conrad*, (1984) Ind. App., 466 N.E.2d 768. As applicable to the facts of this case the clear and unambiguous language of IND. CODE 25–22.5–1.-1(a)(1), in defining the practice of medicine, requires tattooing to be accompanied with a specific intent.

I am of the opinion that the trial court's judgment[1] correctly applied the statute in question.

The judgment should be affirmed.

---

**1.** Counsel for appellant was remiss in failing to include a verbatim statement of the judgment in the brief. A.P. 8.3(A)(4). Flagrant violation of the rules may cause an appeal to be dismissed. *See: Begley v. Begley,* (1982) Ind.App., 434 N.E.2d 125 at 127.