*725 OPINION OF THE COURT
James C. Harberson, Jr., J.
The defendant, who is barely sentient enough to perceive the difference between right and wrong legally (having an IQ of less than 60), admitted to a violation of attempted forcible touching (Penal Law §§ 110.00, 130.52).
The defense argues that because the defendant has a permanent mental and/or physical disability that keeps him from ever engaging in income-producing activity, the court should not assess the various fees outlined in Penal Law § 60.35 at the time of sentence. The People and the Attorney General’s Division of Appeals and Opinions have declined to respond regarding the issue of the constitutionality of the law.
In order to respond to this question raised by the defense, Penal Law § 60.35 and Criminal Procedure Law §§ 420.10, 420.35 and 420.40 should be reviewed in light of the facts of the case, in consideration of the issue of whether an apparently disabled defendant would be entitled to a hearing before being sentenced to determine if such disability is a permanent bar to him being able to engage in income-producing activity to earn income from which to ever pay the Penal Law § 60.35 fees; and, whether such laws as applied to him would be a due process violation of his constitutional rights.
Law
In People v Dunn (254 AD2d 511 [1998], lv denied 92 NY2d 1031 [1998], cert denied 527 US 1024 [1999]), the Court observed that “[i]t has been repeatedly held that Penal Law § 60.35 and CPL 420.35 treat all persons convicted of Penal Law offenses similarly, and that the penalties imposed pursuant thereto bear a reasonable relationship to the State’s legitimate interest in raising revenues (see, People v Barnes, 62 NY2d 702)” (id. at 512).
In People v Amorosi (96 NY2d 180 [2001]), the Court stated that “depriving probationers of conditional freedom based simply on their indigence would be an invidious denial to one class of defendants of a substantial benefit available to another (Bearden v Georgia, 461 US 660)” (id. at 184).
In Bearden v Georgia (461 US 660 [1983]), the Court found that when a person has made a bona fide effort to pay a court-ordered fine, to “deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot *726 pay the fine . . . would be contrary to the fundamental fairness required by the Fourteenth Amendment” {id. at 672-673).
In Ross v Moffitt (417 US 600 [1974]), the Court said the Due Process Clause of the Fourteenth Amendment “emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated” (id. at 609).
In Grossman v Baumgartner (17 NY2d 345 [1966]), the Court stated that “a statute . . . will be upheld as valid if it has a rational basis, that is, if it is not unreasonable, arbitrary or capricious. (See, e.g., United States v Carotene Products Co., 304 US 144, 152 et seq.)” (id. at 349).
In People v Pergament (87 Misc 2d 1098 [1976]), the court concluded that “as long as the relationship between the means used and the end desired to be accomplished is not arbitrary, capricious or unreasonable our courts cannot substitute their judgment over that of a legislative body. (See Grossman v Baumgartner, 17 NY2d 345.)” (Id. at 1100.)
In Railroad Retirement Bd. v Alton R. Co. (295 US 330 [1935]), the Court said,
“When the question is whether the Congress has properly exercised a granted power the inquiry is whether the means adopted bear any reasonable relation to the ostensible exertion of the power. When the question is whether legislative action transcends the limits of due process . . . , decision is guided by the principle that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained” (id. at 348 n 5 [citations omitted]).
Decision
The decision of the Legislature to deny a waiver of these fees by the court after 1995 was based either on overlooking those people subject to them who, due to mental and/or physical disability, could not engage in any income-producing activity and had no other assets that could be used to pay them on the false premise that all criminal defendants could engage in income-producing activity from which sooner or later these assessments could be paid.
Until 1995, CPL 420.35 former (2) provided that “the judge . . . may waive all or any part of the mandatory surcharge *727 where, because of the indigence of the offender, the payment of said surcharge would work an unreasonable hardship on the person . . .
In 1995, the Legislature changed the statute and made it quite clear the court could no longer waive the mandatory surcharge (with one “minor” exception), the crime victim assistance fee, the sex offender registration fee or the DNA databank fee. The legislative language instructs that the “court shall be mindful of the mandatory nature of [such assessments] and the important criminal justice and victim services sustained by such fees” (CPL 420.40 [3]) in making a decision to defer the payment of them and that “[u]nder no circumstances shall [such assessments] be waived” (CPL 420.35 [2]).
Penal Law § 60.35 (8) states that “at the time [these fees are] imposed . . . [the court] shall, issue and cause to be served upon the person required to pay [such fees] a summons directing that such person appear before the court regarding the payment of [them], if after sixty days from the date it was imposed it remains unpaid,” and the “summons shall state that the person served must appear at a date, time and specific location specified in the summons if after sixty days [any of these fees] remains unpaid.”
The sole criterion allowed to be used by the court in determining whether to grant a deferment, jail the defendant for nonpayment, or grant a waiver (of the crime victim fee) is whether at the time the court makes its ruling it finds these payments would “work an unreasonable hardship upon [the defendant]” (CPL 420.35 [1], [2]; 420.40 [2]) due to the defendant’s “indigence.”
CPL 420.35 (1) states that “[t]he provisions of section 420.10 . . . and the provisions of section 420.40 . . . governing deferral of [the fees] . . . and the provisions of section 430.20 . . . governing the commitment of a defendant for failure to pay a fine shall be applicable to [these fees],” and “[w]hen the court directs that the defendant be imprisoned until [these fees are] satisfied, it must specify a maximum period of imprisonment not to exceed fifteen days.”
In the case whether a deferment of the payment is allowed or a jail term is imposed for nonpayment (CPL 420.35 [1]), a civil judgment for the amount due “shall” be filed against the defendant for the amount due (CPL 420.40 [5]).
The court finds that before and after 1995, Penal Law § 60.35 assessments had to be imposed on all defendants without excep *728 tion based on a premise that each defendant had the ability to pay the total due within an initial 60-day period by making a reasonable effort. Before 1995, CPL 420.35 former (2) qualified this premise by allowing a judge the right to waive all or part of a Penal Law § 60.35 assessment when “because of the indigence of the offender, the payment . . . would work an unreasonable hardship on the person.”
It is clear that in the case of a defendant whose mental and/or physical disabilities made it impossible to engage in income-producing activities — and who had no other assets — at the time of sentence, such person was indigent per se and would be granted an automatic waiver of the assessments by the judge as these payments “would work an unreasonable hardship on the person” suffering such disabilities.
It can be said, then, that while the Legislature did not specifically exclude a disabled person who had no means to earn a livelihood because of an inability to engage in income-producing activity, the general waiver power encompassed that situation giving relief to one who was indigent solely due to mental and/or physical disabilities.
After 1995 the legislation was changed to state that “[u]nder no circumstances shall the mandatory [Penal Law § 60.35 assessments] be waived” (with one “minor” exception) (CPL 420.35 [2]). This made the basic premise, that each defendant had the ability to pay the total due within a 60-day period after it was ordered by the court by making a reasonable effort, unmodified by the ability of the judge to waive the assessments in the case of an individual whose permanent mental and/or physical disabilities prohibited such person from engaging in income-producing activities (making him per se indigent), a false premise.
It would be counterintuitive to assume the Legislature would expect a person whose permanent mental and/or physical disabilities precluded any ability to engage in income-producing activity, who had no other assets and who is totally dependent to survive on federal and/or state programs supported by tax revenue, nonetheless to be able to make the same effort as others without impairments so assessed under Penal Law § 60.35 to make any payment ever, much less in 60 days.
The court finds that the Legislature simply overlooked this class of disabled defendants when abolishing a full waiver of the obligation to pay Penal Law § 60.35 assessments after 1995 because they were not singled out for relief before 1995, as they *729 were subsumed in the general waiver available to others before the change of the statute, so consideration of them went unnoticed.
That being the finding of the court, the court also finds Penal Law § 60.35 was never meant to be applied to a person so permanently mentally and/or physically disabled that such a person could never engage in income-producing activity. To rule otherwise would create a question of whether the enactment was constitutional for “[fit is hornbook law that a court will not pass upon a constitutional question if the case can be disposed of in any other way (. . . McKinney’s Cons Laws of NY, Book 1, Statutes, § 150)” (People v Felix, 58 NY2d 156, 161 [1983]).
There is a constitutional issue in this case as well that would support the relief requested by the defense. In reviewing the constitutionality of this law the court is guided by the guidelines explained by the court in Brady v A Certain Teacher (166 Misc 2d 566 [1995]):
“At the outset, the court observes that there are several principles of statutory construction and interpretation as pertain to constitutional challenges which are applicable here. First, that [t]he courts should not strike down a statute as unconstitutional unless such statute clearly violates the Constitution’ (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [a]). Second, that [s]tatutes are presumed valid and constitutional and the one challenging the statute has the burden of showing to the contrary’ (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 m. . .
“Applying these principles it has been held that it is with great reluctance and as a last resort that the courts will strike down a solemn legislative enactment on the ground that it conflicts with the State or Federal Constitution (see, Matter of Ahern v South Buffalo Ry. Co., 303 NY 545 [1952]). It has also been held that every presumption will be indulged in to support and sustain legislation, and it will be assumed that the Legislature intended to enact a statute which is in harmony with the Federal and State Constitutions (see, People v Epton, 19 NY2d 496 [1967], mot to amend remittitur granted 19 NY2d 1017 [1967]; People v Arez, 64 Misc 2d 723 [1970], affd 28 NY2d 764 [1971]). It has been further held that the party alleging the unconstitution *730 ality of a statute has the heavy burden of demonstrating the infirmity beyond a reasonable doubt (see, Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358 [1978]; Matter of Schultz Mgt. v Board of Stds. & Appeals, 103 AD2d 687 [1984], affd 64 NY2d 1057 [1985]).
“Significantly, it has been held that courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases involving life and liberty and where the invalidity of the act is apparent on its face (see, People v Norris, 46 Misc 2d 44 [1965]; National Psychological Assn, for Psychoanalysis v University of State of N.Y., 18 Misc 2d 722 [1959], affd 10 AD2d 688 [1960], affd 8 NY2d 197 [1960], appeal dismissed 365 US 298 [1961]), and that this rule is particularly to be applied in a case where the Court of Appeals has rendered decisions in the area covered by the statute (see Matter of Excelsior Pictures Corp. v Regents of Univ. of State of N.Y., 2 AD2d 941 [1956], affd 3 NY2d 237 [1957]; Blye v Globe-Wernicke Realty Co., 68 Misc 2d 948 [1972], appeal dismissed 30 NY2d 749 [1972]) or where the Court of Appeals has implicitly, if not, explicitly upheld the validity of the statute (see Blye v Globe-Wernicke Realty Co., 68 Misc 2d 948, supra; People v Norris, 46 Misc 2d 44, supra).” (Id. at 571-572.)
The Dunn court ruled “that Penal Law § 60.35 and CPL 420.35 treat all persons convicted . . . similarly” (254 AD2d at 512). It does not. CPL 420.35 incorporates CPL 420.10 and 430.20 as being “applicable” to hearings on the failure to pay Penal Law § 60.35 assessments. The underlying assumptions on which these laws are based is that any person assessed under Penal Law § 60.35 has the financial ability at the time of sentence to pay what is due, or will be able to do so within 60 days of the date of sentence by engaging in income-producing activity.
The defendant’s permanent mental and/or physical disabilities, present at the time of sentencing, keep him from engaging in income-producing activities and deprive him of the opportunity all able bodied defendants have to engage in income-producing conduct to pay the assessment before 60 days to avoid the entry of a civil judgment or to show evidence of such efforts to a court to avoid jail and be granted a deferral of the payments if not paid within 60 days.
*731 So, if the whole constitutional foundation for Penal Law § 60.35 and CPL 420.35 is that “all persons” are treated “similarly” in that all are initially assessed the same amounts and that they are expected to pay the same amount in full within 60 days and, for those who do not, their efforts to do so will be reviewed as a basis to avoid jail or be granted a deferral of the payments, while the debt imposed is equal in amounts, the right to avoid a civil judgment and/or jail after it is not paid within 60 days is a benefit denied to the disabled individual and given the nondisabled defendant.
The court finds that this statutory outcome “would be an invidious denial to one class of defendants [disabled] of a substantial benefit available to another [nondisabled defendants]” (Amorosi at 184) — the “substantial benefit” being able to avoid the consequences of a failure to pay Penal Law § 60.35 assessments within 60 days a totally disabled defendant could not enjoy due to not having an income-producing capacity.
This is a violation of the Due Process Clause of the Fourteenth Amendment which “emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated” (Ross v Moffitt, supra at 609).
To uphold a statute “as valid [it must have] a rational basis, that is, if it is not unreasonable, arbitrary or capricious” (Grossman at 349) and “when the question is whether legislative action transcends the limits of due process . . . [the inquiry] is guided by the principle that the law shall not be unreasonable, arbitrary or capricious” (Alton R. Co. at 348 n 5); and, if it is determined “the relationship between the means used and the end desired to be accomplished is not arbitrary, capricious or unreasonable courts cannot substitute their judgment over that of the legislative body” (Pergament at 1110).
The court finds that while Penal Law § 60.35 treats “all persons convicted of Penal Law offenses similarly” (Dunn at 512) in that all defendants are subject to equal assessments, the “relationship between the means used and the end desired” (Pergament at 1100) is arbitrary and unreasonable and thus “transcends the limits of due process” (Alton R. Co. at 348 n 5) because the law allows able bodied persons 60 days to pay what is due to avoid the consequences of not making the payment while denying the same opportunity, a “substantial benefit” (Amorosi at 184), to other members of this class of defendants who cannot engage in income-producing activity due to a permanent mental and/or physical disability.
*732 In People v Jones (39 NY2d 694 [1976]), Chief Judge Breitel in his dissenting opinion observed that
“[w]hile justice and law may not be coextensive, and indeed they are not, a divergence too great is not tolerable or acceptable under constitutional limitations based on due process of law, equal protection of the law, and cruel and unusual punishment. Margin for discrepancy there may be between law and justice but not an ocean’s breadth justified only by adherence to the letter” (id. at 701).
In this case the court finds that the “divergence” between “justice and law” is “too great . . . under constitutional limitations based on due process of law” because the “[m]argin for discrepancy [is] ... an ocean’s breadth justified only by adherence to the letter” (id.). So regardless of how other defendants are treated by these laws due process “emphasizes fairness between the State and the individual dealing with the State” (Ross at 609). To “justify” expecting the disabled defendant to make the effort of nondisabled individuals within 60 days to pay these assessments without any consideration of his ability to do so before such are assessed, “justified only by adherence to the letter” of the law, amounts to the state treating him as an individual unfairly in violation of due process for making unreasonable and arbitrary demands of him he cannot comply with due solely to a permanent disability.
Conclusion
The court finds that the Legislature overlooked persons too disabled to engage in gainful employment when it changed CPL 420.35 (2), allowing a waiver of Penal Law § 60.35 fees in their cases by a court, to prohibiting such a waiver in 1995 — the allowance of a deferral in payment of such assessments again did not deal with the fact certain permanent disabled individuals would never be able to earn income from which to pay such assessments at the time of sentence or in the future.
The defendant in this case is so mentally and/or physically permanently disabled he will never be able to engage in income-producing activities in order to raise funds to pay the Penal Law § 60.35 assessments to be made against him at the time of sentence or in the 60-day period thereafter allowed by statute.
This defendant, unlike others subject to the Penal Law § 60.35 assessments who are not permanently disabled at the time of sentence, is thereby deprived of this 60-day opportunity to earn *733 the money to pay it, a “substantial benefit” (Amorosi at 184) they enjoy giving them an opportunity to avoid jail and/or the consequences of a civil judgment entered against them.
The permanently disabled defendant is thus placed in a Sisyphean conundrum as he is burdened with an ordeal impossible for him to complete which he cannot be relieved of by waiver of the Penal Law § 60.35 fees prohibited by statute. The court finds in such case the law is an unconstitutional violation of the Due Process Clause of the Fourteenth Amendment under Bearden and Amorosi.
The defendant is granted a hearing by this court to determine if the defendant’s mental and/or physical disabilities permanently bar him from engaging in income-producing activity.