OPINION OF THE COURT
Lewis Bart Stone, J.
These four applications raise similar issues of law in an area where there is little precedent, various practices, and a controlling statute which the Practice Commentary to the New York Criminal Procedure Law characterizes as “poorly drafted and difficult to follow.” (Peter Preiser, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 420.40.)
*882 Defendant John Morrison (Morrison) moved, pursuant to CPL 420.40, for an order of this court to defer mandatory surcharges imposed upon him, pursuant to Penal Law § 60.35, when Morrison was sentenced on November 17, 2011, to a term of imprisonment in state prison, following his conviction to one count of attempted burglary in the second degree and two counts of burglary in the third degree, under three separate indictments.
Defendant Shevon Johnson (Johnson) moved pursuant to the same provision for a similar order to permit him to defer similar surcharges imposed on him when he was sentenced, on November 10, 2011, to a term of imprisonment in state prison, following his conviction by plea to criminal possession of a forged instrument in the second degree.
Defendant Charles Jay (Jay) moved pursuant to the same provision for a similar order to permit him to defer similar surcharges imposed upon him when he was sentenced, on December 8, 2011, to a term of imprisonment in state prison following his conviction by plea to attempted criminal sale of a controlled substance near school grounds.
Defendant Simeon Olmos (Olmos) moved pursuant to CPL 420.35 for a waiver of a surcharge imposed upon him when he was sentenced, on July 1, 2010, to a term of imprisonment in state prison, after conviction by plea to one count of attempted burglary in the second degree, on the grounds of indigence.
Each of these defendants was sentenced to prison terms in excess of 60 days, were convicted by plea, and waived their rights to appeal. While CPL 420.40 establishes a procedure which “governs the deferral of the obligation to pay all or part of a mandatory surcharge, sex offender registration fee or DNA data bank fee imposed pursuant to [Penal Law § 60.35] and financial hardship hearings relating to mandatory surcharges” (CPL 420.40 [1]), no provision of the CPL provides for a waiver of all such surcharges. (CPL 420.35 [3].)
Under CPL 420.40, a defendant upon whom surcharges are imposed pursuant to Penal Law § 60.35 is accorded an opportunity to seek deferral (but not waiver) of the collection of such surcharges on the grounds of “unreasonable hardship” at a hearing “[o]n an appearance date set forth in a summons issued pursuant to subdivision three[1] of section 60.35 of the penal law” (CPL 420.40 [2]). However, Penal Law § 60.35 (8) *883 also expressly provides: “The court shall not issue a summons under this subdivision to a person who is being sentenced to a term of confinement in excess of sixty days in jail or in the department of corrections and community supervision.”
In none of the four cases here had such summons been issued to these defendants and no summons may be issued as each was sentenced to state prison. Accordingly, the court has no jurisdiction under CPL 420.40 to hold a deferral hearing, which hearing is the sole statutory route authorizing a court to defer the collection of a surcharge.
The CPL treats surcharges differently than fines, restitution or reparation, imposed or to be imposed on a convicted defendant. The term “mandatory” is used to distinguish surcharges from fines, restitution or reparations imposed where the imposition of the latter involves the substantial discretion of the sentencing court. Two express provisions of the CPL reinforce the mandatory nature of surcharges. CPL 420.30, which provides a procedure for a postsentence remission of fines, restitution or reparation imposed in the case of financial hardship, expressly excludes “mandatory surcharges” from this procedure. (CPL 420.30 [2], [3].) Further, CPL 420.35 (2), added to the CPL by chapter 3 of the Laws of 1995 (chapter 3), expressly provides that mandatory surcharges may not be waived.[2] For this reason alone, Olmos’ motion for a waiver of surcharges must be denied.
Under Penal Law § 60.35 (5) the collection of mandatory surcharges from incarcerated prisoners is to be achieved by a deduction from prisoners’ accounts, including moneys earned by prisoners and funds placed in such accounts by friends and relatives. As prisoners’ “wages” are often trivial, a prisoner without external contribution from friends or relatives or personal resources may find himself or herself without spending money. For example, Olmos notes that his “only source of income is my prison wages of $3.72 per week.” At that rate, absent other funds in his account, it would take him about two years to pay off his mandatory surcharge obligation.
*884 While a court may not remit or waive Penal Law surcharges, this court is aware that from time to time, courts purporting to act in their discretion, have entered judgment upon a mandatory surcharge or have deferred the collection of a mandatory surcharge to a date following the completion of a sentence. Several Fourth Department decisions, both decided before and after the enactment of chapter 56 of 2004, seem to recognize this power, but in none of such decisions has the Fourth Department actually deferred the surcharges, therefore rendering the language of such cases effectively dicta rather than holding. Further, this court has found no decision articulating any standard for a decision to exercise, or to refuse to exercise such discretion, to defer a surcharge on a defendant sentenced to more than 60 days or any decision finding such an exercise or lack of exercise to be reviewable, on appeal, on the grounds of abuse of discretion.
On the other hand, the Court of Appeals in People v Furet (12 NY3d 740 [2009]) and in People v Harris (12 NY3d 741 [2009]) held that mandatory surcharges being mandatory, were automatic and were conditions resulting from a sentence, and thus respectively did not have to be pronounced by a court at the time of sentence and could properly be entered by the Clerk of the Court. On the same date the Court of Appeals decided Furet and Harris, the Court in People v Hoti (12 NY3d 742, 743 [2009]) (a case in which this court took Hoti’s plea and sentenced him) held that the failure to advise a defendant of the imposition of surcharges “did not deprive the defendant of the opportunity to knowingly, voluntarily and intelligently” enter into a plea, distinguishing People v Catu (4 NY3d 242 [2005]). In making such determinations, that Court distinguished surcharges from postrelease supervision, which is a component of a sentence and not a mere consequence.
Under CPL 420.40, which requires a court to defer a surcharge in a hearing on the return of a summons to pay a surcharge in the case of “unreasonable hardship” upon a defendant “or his immediate family,” there is a clear standard for review of a court’s determination. The lack of any standard elsewhere is a strong indication that under the statutory scheme no deferral authority exists for a court to defer a surcharge except under section 420.40. This conclusion follows from the
“universal principle in the interpretation of statutes that expressio unis est exclusio alterius. That is, to say, the specific mention of one person or thing *885 implies the exclusion of other persons or things. As otherwise expressed, where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted and excluded.” (McKinney’s Statutes § 240, Comment.)
Further, as all defendants here agreed to pleas which did not provide for a deferral or remission of their surcharges, none has preserved any right to raise such issue on appeal. Further, as each defendant also waived his rights to appeal, such waiver, even under the dicta of the Fourth Department cases, precludes any consideration of a deferral of the surcharges on a postjudgment motion. (People v Camacho, 4 AD3d 862 [4th Dept 2004].)
The collection of surcharges from prisoners, painful though it may be for prisoners with little money, is a clear and intentional judgment of the legislature to do so. In People v Guerrero (12 NY3d 45, 49 [2009]) the Court of Appeals noted,
“Section 60.35 was originally enacted as part of a massive revenue-raising bill meant to ‘avert the loss of an estimated $100 million in State tax revenues.’ (Legislative Mem in Support, Bill Jacket, L 1982, ch 55, at 6; see also People v Quinones, 95 NY2d 349, 352 [2000] [‘The mandatory surcharge/crime victim assistance fee is paid to the State to shift costs of providing services to victims of crime from law abiding taxpayers and toward those who commit crimes’ (internal quotations marks omitted)]; People v Barnes, 62 NY2d 702, 703 [1984] [mandatory surcharge levied and collected following every criminal conviction ‘appear(s) to be related ... to the State’s legitimate interest in raising revenues’]).”
Further, even the post-chapter-3 Fourth Department cases state that the mere fact that an incarcerated defendant is indigent does not itself create any basis for deferring a surcharge. Clearly these decisions imply that the mere indigence of an imprisoned defendant is no basis for a deferral. (People v Kistner, 291 AD2d 856 [4th Dept 2002]; People v Camacho.) As prisoners’ earnings are trivial, it would make no sense to apply the standards of CPL 420.40 as to hardship of a “family member” as the amount earned by the prisoner would be de minimis and could not itself affect the family member. In addition, defendants Johnson’s and Jay’s reliance on People v Nolley (219 AD2d 882 [4th Dept 1995]) is inappropriate as Nolley addresses *886 a waiver of surcharges and was decided prior to the adoption of chapter 3 which expressly forbids such waiver.
In reviewing the reported cases subsequent to enactment of chapter 56 of 2004, this court has found only three cases which might be read to support a power to defer a mandatory surcharge for a prisoner, viz. People v Johnson (60 AD3d 1496 [4th Dept 2009]), People v Cheatom (57 AD3d 1447 [4th Dept 2008]) and People v Brian L. (17 Misc 3d 724 [Watertown City Ct 2007]). In the two Fourth Department cases, the Court found no proof of hardship and declined to take action, thus rendering the decision, at best, dicta. In no case, however, was the distinction made between a defendant sentenced for more or less than 60 days. Further, all these cases were decided prior to the Court of Appeals decisions in Furet and Guerrero in 2009.
The recent spate of applications for relief from mandatory surcharge impositions, as illustrated by these four motions, indicates to this court that many more can be expected. This court has seen a number in the past and has tended to treat them on the “merits” granting and denying them, as the case may be. To the extent this court has granted the petitioner’s relief in the past, this court confesses error. This recent spate has caused this court to look further into the issues presented and the law, which has resulted in this opinion.
Surcharges were originally enacted by the legislature as a revenue matter to have those convicted of crimes defray some of the costs to the State arising out of their criminal acts. Apparently, some courts not being principally responsible for the state budget, undercut this purpose by waiving, remitting or otherwise interfering with this revenue stream, leading to further enactments and a subsequent fine tuning, such as chapter 56 (part DD) of the Laws of 2008, which amended the Penal Law to carry out the previous amendment to the CPL to add other surcharge exemptions for youthful offenders from mandatory treatment.
Where a court has acted to defer or enter judgment on these surcharges, the Department of Corrections and Community Supervision must follow the court’s order, unless or until such order is revised or vacated on appeal. Because the surcharges rarely amount to more than a few hundred dollars, it is probably a sound exercise of fiscal responsibility for the Department of Corrections or the People not to appeal any improper grant or relief of a surcharge as the issue is fiscal and the cost of such appeal would have a greater negative impact on the public than *887 letting the matter drop. Further, Penal Law § 60.35 provides that all mandatory surcharges are payable to the State, rather than local accounts. As criminal appeals are overwhelmingly pursued by local district attorneys, their exercise of their discretion not to appeal (which would impact on their own budgets and reduce their capacity to prosecute other criminals) is understandable, if not commendable. The People routinely decline to comment, support or oppose motions such as those considered here probably for the same reasons of discretion and fiscal concerns.
The court is also not unaware of the asymmetric realities of prisoners motions, where there is no economic disincentive for an indigent inmate to churn out motions — either as a matter of time value of money (an inmate has plenty of time, and no better economic use then to try to hit the lottery of appeal) or of the cost of filing (free to an indigent) or the cost of representation. Yet, a court must, in its performance of its duties, review every postjudgment motion to sift the few kernels of grain from the large volume of chaff.
The sole reported case seeming to grant relief from mandatory surcharges, subsequent to the enactment of chapter 56 of 2004 is People v Brian L. In Brian L., the court invoking “constitutional principles,” granted a hearing, prior to sentencing, as to whether a mandatory surcharge should be imposed on a defendant whose mental and/or physical disabilities prohibited him from engaging in any income-producing activities. As a decision of an inferior court, this court is not bound by such case, and is further unpersuaded by its reasoning. While a mandatory surcharge might not be immediately collectible from Brian L., he was certainly not precluded from winning the state lottery or inheriting funds, or collecting a possible future court judgment out of which a surcharge could be paid. Further, as the hearing was ordered prior to sentence, it is not clear what Brian L.’s sentence would be and therefore, whether he would be entitled to a hearing, if his sentence was under 60 days, or whether the surcharge would be collectable out of his prison account. In any event, Brian L. was decided prior to the Court of Appeals 2009 decisions in Guerrero, Furet, Harris, and Hoti.
The Fourth Department cases subsequent to chapter 56 of 2004 are also to the contrary to Brian L., finding indigency of an inmate alone does not impose an unreasonable hardship, recognizing that there are many other indigent inmates paying surcharges. While not explicit, the language clearly indicates *888 that federal constitutional prohibitions of cruel and unusual punishment are irrelevant to the issue of collection of surcharges from prisoners’ funds.
This problem of postjudgment motions addressed to mandatory surcharges has become exacerbated by the development of word processing programs, “fill-in-the-blank” motions (such as the motions made by Morrison, Johnson, Jay and Olmos here) and the reduction of court budgets placing time pressures on the court’s ability to process the unending stream of postjudgment motions.
With this background, this court finds that the structure enacted by the legislature for “mandatory surcharges” means what it says, i.e., they are automatically imposable, and courts are without authority to waive or restrict a surcharge (other than a crime victim assistance fee, in certain circumstances) or defer a surcharge in the case of a convicted defendant sentenced to imprisonment for more than 60 days. As entering a judgment on a surcharge has the identical practical effect of deferring collection of a surcharge, a court is equally without discretion to do so.[3]
The motions are denied.

. Penal Law § 60.35 (3) does not provide for the issuance of a summons, and the sole provision in Penal Law § 60.35 addressing a summons is instead *883 found in Penal Law § 60.35 (8). As a statute must be read to carry out the intent of the legislature, the reference to the summons must be read to refer to Penal Law § 60.35 (8), as any other construction would make section 420.40 inoperable, a circumstance clearly not contemplated by the legislature. (McKinney’s Cons Laws of NY, Book 1, Statutes § 392.)

. Chapter 56 of the Laws of 2004 (chapter 56 of 2004) rewrote subdivision (2) of CPL 420.35 to allow waiver of certain of the surcharges in the case of a youthful offender.

. A judgment if entered may only be collected out of a portion of the judgment debtor’s earnings by garnishment. Thus an entry of a judgment on a surcharge is economically equivalent to deferring at least the lion’s share of the surcharge which would be otherwise collectible.