2004-NMCA-065

92 P.3d 24

**CITY OF ALBUQUERQUE,
Plaintiff–Appellee,**

v.

**Reneé SACHS, Defendant–Appellant.**

**No. 23,632.**

Court of Appeals of New Mexico.

March 23, 2004.

Certiorari Denied, No. 28,659, June 4, 2004.

Robert M. White, City Attorney, Donald F. Harris, Assistant City Attorney, Albuquerque, for Appellee.

Jeffrey J. Dempsey, Albuquerque, for Appellant.

## OPINION

VIGIL, J.

{1}  In this case we determine whether the City of Albuquerque Ordinance (the City Ordinance) which prohibits public nudity discriminates against women in violation of the Equal Rights Amendment in the New Mexico Constitution because it prohibits a woman from showing her breast in a public place without a fully opaque covering of her entire nipple when there is no such prohibition against men. N.M. Const. art. II, § 18; Albuquerque, N.M., Ordinance ch. 46, § 11–8–3(B) (1994). We hold that it does not. We also hold that the ordinance does not violate the New Mexico Human Rights Act (Human Rights Act) which in general prohibits an establishment that offers services to the public from discriminating on the basis of sex. Finally, we hold that the conduct in this case is not a form of expression and communication of ideas, protected by the First Amendment of the United States Constitution or by Article II, Section 17 of the New Mexico Constitution. We therefore affirm Defen-

dant's conviction for public indecency and her sentence to 90 days probation.

## FACTS

{2}   The case originated in the Bernalillo County Metropolitan Court where the Defendant was charged with violating the City Ordinance which prohibits public nudity. The parties stipulated to the operative facts. Defendant is the owner and operator of a tattoo and body modification establishment. She published a genderneutral advertisement offering customers free nipple piercing on the condition the customers agreed to have their nipples pierced while sitting in the front window of the business. Numerous persons availed themselves to the offer and had their nipples pierced while sitting in the window. The piercings were plainly visible from the public sidewalk. The first customer was male; the second was a female. When the police officer arrived, he observed a female sitting in the store window exposing her breasts in full public view as she had her nipples pierced with several people on the sidewalk watching.

{3}   Section 11–8–3 of the City Ordinance at issue states in pertinent part:

(A) No person shall knowingly or intentionally, in a public place ... appear in a state of nudity;

(B) No person who owns or operates a public place shall knowingly or intentionally permit or allow another person to violate the provisions of this article in that public place.

Section 11–8–2 of the City Ordinance defines "nudity" as:

The showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of the covered male genitals in a discernibly turgid state.

{4}   Defendant was convicted of violating Section 11–8–3(B) of the City Ordinance on the basis of the stipulated facts and she received a sentence of 90 days probation. She appealed to the district court where she was entitled to a de novo trial. She again stipulated to the foregoing facts.

{5}   In the district court, Defendant filed a motion to dismiss "because the City Ordinance prohibits only the showing of the female breast and not the male breast" and it is therefore "unconstitutional on its face" because it violates Article II, Section 18 of the New Mexico Constitution which provides, "[e]quality of rights under law shall not be denied on account of the sex of any person."

{6}   Defendant also argued that the charge should be dismissed because the City Ordinance requires her to violate the Human Rights Act in that it requires her to discriminate on the basis of sex in offering her services to the public.

{7}   Finally, Defendant filed a pretrial motion in which she argued that, because her conduct was protected under the First Amendment and Article II, Section 17, Section 11–8–3(B) required the state to prove that her conduct was obscene before it could prohibit the conduct.

{8}   The district court denied Defendant's motions and found her guilty on the basis of the foregoing facts. The judgment and sentence of the metropolitan court was therefore affirmed. Defendant appeals.

## DISCUSSION

### A.   New Mexico Equal Rights Amendment

{9}   In 1972, the New Mexico Equal Rights Amendment was adopted as part of Article II, Section 18 of the New Mexico Constitution, effective July 1, 1973. It states: "Equality of rights under law shall not be denied on account of the sex of any person." N.M. Const. art. II, § 18. Defendant argues that the City Ordinance prohibits public exposure of the female breast but not the male breast and therefore it violates the New Mexico Equal Rights Amendment. We review this argument de novo. *See State v. Lasner*, 2000–NMSC–038, ¶ 24, 129 N.M. 806, 14 P.3d 1282 (stating review of a claim that constitutional rights violated presents an issue of law which is reviewed de novo).

{10}   In this case, the district court took judicial notice that the female breast is different than a male breast and relied on *N.M. Right to Choose* for the proposition there is

not a flat prohibition on "classifications based on physical characteristics unique to one sex." In concluding that "we are talking about a physical characteristic which is unique to one sex as opposed to another," the district court looked to the purpose of the City Ordinance and found that it was to protect the morals of the community of Albuquerque. The district court then evaluated the City Ordinance's effect on women and concluded that it does not result in a disadvantage to women unlike the regulations in *N.M. Right to Choose*. The district court determined that the classification in the City Ordinance is properly based on a unique characteristic and therefore constitutional on its face.

{11} Defendant did not object to the district court's reliance on judicial notice at the trial level, nor is there any argument on appeal challenging the district court's reliance on judicial notice. Defendant does not challenge the district court's conclusion that the City Ordinance is not disadvantageous to women. Defendant's argument is that a strict scrutiny analysis is required and that the case should be remanded for dismissal or for a new trial at which the City should be required to rebut the presumption that the City Ordinance is unconstitutional. We agree with the district court's approach and hold that the classification in the City Ordinance is properly based on a unique characteristic.

{12} The New Mexico Equal Rights Amendment "is a specific prohibition that provides a legal remedy for the invidious consequences of the gender-based discrimination that prevailed under the common law and civil law traditions that preceded it. As such, the Equal Rights Amendment requires a searching judicial inquiry concerning state laws that employ gender-based classifications." *N.M. Right to Choose/NARAL v. Johnson*, 1999–NMSC–005, ¶ 36, 126 N.M. 788, 975 P.2d 841. This is because "[w]e construe the intent of this amendment as providing something beyond that already afforded by the general language of the Equal Protection Clause." *Id.* ¶ 30.

{13} The City Ordinance prohibits public nudity by distinguishing between males and females on the basis of unique physical characteristics attributable to each. *N.M. Right to Choose* teaches that such a classification is neither automatically allowed or automatically prohibited by the New Mexico Equal Rights Amendment, *id.* ¶¶ 39–43, and that "[a] flat prohibition of such classifications may lead to absurd results." *Id.* ¶ 38 (internal quotation marks omitted). To determine whether men and women are similarly situated with respect to a classification, we look beyond the classification to the purpose of the law. *Id.* ¶ 40. Further, *N.M. Right to Choose* requires that we ascertain whether the classification "operates to the disadvantage of persons so classified." *Id.* (internal quotation marks omitted). When the classification is based on a unique physical characteristic, but the classification operates to the disadvantage of the persons so classified, a presumption exists that the New Mexico Equal Rights Amendment is violated. *Id.* ¶ 47. The law will be deemed unconstitutional unless the state is able to show both a compelling justification for the classification and that the law accomplishes its purpose by the least restrictive means. *Id.* ¶¶ 43, 47; *Marrujo v. N.M. State Highway Transp. Dep't*, 118 N.M. 753, 757, 887 P.2d 747, 751 (1994) (stating that for inherently suspect classification, burden is on the state to show delineation of classes supports a compelling state interest and that legislation accomplishes its purpose by least restrictive means).

{14} The City Ordinance Section 11–8–3(A) clearly states its purpose: it is to prohibit any person from knowingly or intentionally being nude in a public place. Section 11–8–3(B) also prohibits the owner or operator of a public place from permitting or allowing persons to be nude in that public place. Enacting such an ordinance is clearly within the police powers of the City of Albuquerque. *See City of Santa Fe v. Gamble–Skogmo, Inc.*, 73 N.M. 410, 415, 389 P.2d 13, 17 (1964) (stating police power is exercised to protect and promote the safety, health, morals and general welfare); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (stating public indecency statutes are designed to protect

morals and public order which fall within the realm of traditional police power); *City of Erie v. PAP's A.M.*, 529 U.S. 277, 296, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (stating ordinance prohibiting nudity in public places reflected city's efforts to protect public health and safety which were clearly within police powers). In fact, public indecency, including nudity was a criminal offense at common law, and public nudity was considered an act *malum in se.* The common law root of the offense was "gross and open indecency." *Barnes*, 501 U.S. at 568, 111 S.Ct. 2456 (citations omitted). *See generally State v. Ciancanelli*, 181 Or.App. 1, 45 P.3d 451, 455–458 (2002) (en banc), which surveys the historical disdain for public nudity, and states that regulation of public nudity has been a regular feature of the legal landscape for several hundred years, at least as early as 1663.

{15} We now determine whether the City Ordinance operates to the disadvantage of women in accomplishing its purpose of prohibiting public nudity. In doing so, we have reviewed cases decided throughout the United States which admittedly involve different provisions of law and do not engage in the same analysis required by *N.M. Right to Choose* to determine if the Equal Rights Amendment has been violated. However, these decisions convincingly make the point that prohibiting public exposure of the female breast but not the male breast does not operate to the disadvantage of women. Generally, courts that have considered laws that prohibit only females from publicly exposing their breasts have concluded that such laws do not violate federal or state equal protection clauses. *See generally* Kimberly J. Winbush, Annotation, *Regulation of Exposure of Female, But Not Male, Breasts*, 67 A.L.R. 5th 431 § 2, at 442 (1999). These cases generally uphold the sex-based distinction on the basis of the differing physical characteristics of men and women. *Id.See also Buzzetti v. City of New York*, 140 F.3d 134, 143 (2d Cir.1998) (rejecting an equal protection challenge and stating public reactions to exhibition of the female breast and male breast are highly different; ordinance could properly prohibit topless dancing only by females); *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1256 (5th Cir.1995) (noting that ordinance stated city council reviewed "convincing documented evidence regarding the physiological and sexual distinctions between male and female breasts[;]" city ordinance excluding male breasts from definition of nudity upheld under the state's equal rights amendment) (internal quotation marks omitted); *Tolbert v. City of Memphis*, 568 F.Supp. 1285, 1290 (W.D.Tenn.1983) (stating in our culture, female breasts are a justifiable basis for a gender-based classification; topless dancing properly prohibited under the equal protection clause); *City of Tucson v. Wolfe*, 185 Ariz. 563, 917 P.2d 706, 708 (Ct.App.1995) (agreeing that gender classification based on clear differences between sexes is not invidious, and a legislative classification based upon those differences is not unconstitutional; ordinance prohibiting females from exposing nipple and areola regions of their breasts not a violation of equal protection); *Locker v. Kirby*, 31 Cal.App.3d 520, 107 Cal.Rptr. 446, 451 (1973) (recognizing in an equal rights amendment challenge "the obvious physical differences between mature male and female breasts," and upholding prohibition against topless waitresses where liquor sold); *State v. Turner*, 382 N.W.2d 252, 256 (Minn.Ct.App.1986) (agreeing that equal protection does not mean that physiological differences between men and women must be disregarded; ordinance prohibiting female from topless sunbathing upheld); *City of Jackson v. Lakeland Lounge of Jackson, Inc.*, 688 So.2d 742, 751–52 (Miss. 1996) (agreeing that physical differences between sexes may be reflected in laws recognizing those differences without offending equal protection guarantee; regulation of female but not male breasts upheld); *State v. Vogt*, 341 N.J.Super. 407, 775 A.2d 551, 558 (Ct.App.Div.2001) (agreeing that prohibition against exposure of female breast but not male breast not violative of equal protection because of physical differences between sexes); *MJR's Fare of Dallas, Inc. v. City of Dallas*, 792 S.W.2d 569, 575 (Ct.App.1990) (holding the law allows sex-based distinctions if physical characteristics require these distinctions, and city introduced undisputed testimony that physiological and sexual distinctions exist between male and female breasts,

and that female breasts differ both internally and externally from male breasts, and that the female, but not male, breast is mammary gland; ordinance requiring complete and opaque covering of areola of female breast but not male breast upheld against equal rights amendment challenge); *City of Seattle v. Buchanan*, 90 Wash.2d 584, 584 P.2d 918, 920 (1978) (en banc) (asserting common knowledge tells us there is a real difference between the sexes with respect to breasts; upholding conviction for public exposure of female breasts in face of equal rights amendment challenge). The foregoing authorities persuade us that the physical characteristic distinctions made by the City Ordinance do not operate to the disadvantage of women.

{16} We therefore conclude that the City Ordinance does not treat men and women differently in violation of the New Mexico Equal Rights Amendment. The City Ordinance does not prohibit public nudity by women while allowing public nudity by men. It recognizes that females and males have different anatomies, so the objective is accomplished in a non-discriminatory manner. In this context, we agree with the United States Supreme Court that, "[t]he two sexes are not fungible; a community made up exclusively of one [sex] is different from a community composed of both." *United States v. Virginia*, 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (internal quotation marks and citation omitted). We therefore hold that the City Ordinance does not make an invidious gender classification that operates to the disadvantage of women and it does not violate the New Mexico Equal Rights Amendment.

### B. New Mexico Human Rights Act

{17} Defendant argues that the Human Rights Act makes it an unlawful discriminatory practice for any establishment that provides or offers its services to the public to make a distinction, directly or indirectly in offering or refusing to offer its services to any individual because of sex. *See* NMSA 1978, § 28–1–2(H) (2003) (defining "public accommodation" in part as "any establishment that provides or offers its services, facilities, accommodations or goods to the public"); § 28–1–7(F) (stating it is an unlawful discriminatory practice for "any person in any public accommodation to make a distinction, directly or indirectly, in offering or refusing to offer its services, facilities, accommodations or goods to any person because of ... sex"). Defendant asserts that the City Ordinance requires her to discriminate on the basis of sex in offering her services to the public, in violation of the Human Rights Act. We have already held that the City Ordinance does not discriminate on the basis of sex in violation of the New Mexico Equal Rights. We therefore reject Defendant's contention that she is discriminating against women in violation of the Human Rights Act by complying with the City Ordinance.

### C. Form of Expression and Communication of Ideas

{18} Defendant asserts that she was engaged in a form of expression and the communication of ideas in three ways: (1) the expression on an age-old human art form (body art-artistic expression), (2) the display of one of the many procedures that her business offers so that prospective customers would be better able to judge for themselves whether or not they wanted to undergo such a procedure (nipple piercing-education), and (3) the general communication of the nature of her business to the public (advertisement-commercial speech). Therefore, she argues, her conduct was permitted by the City Ordinance in the absence of a finding of obscenity.

{19} The argument is based on the language of Section 11–8–3(B) of the City Ordinance which states in pertinent part that "this article [prohibiting public nudity] shall not apply to forms of expression and the communication of ideas, such as theatrical appearances, which may not be prohibited absent a finding of obscenity." **[RP 39]** The district court ruled that Defendant's conduct did not fall under this provision of the City Ordinance and she was therefore not entitled to a determination of whether the conduct was obscene. Defendant argues on appeal that this ruling was erroneous. We review her contention de novo, *Acosta v. City of Santa Fe*, 2000–NMCA–092, ¶ 16, 129 N.M.

632, 11 P.3d 596 (stating interpretation of an ordinance presents a question of law, which is reviewed de novo). We affirm the district court.

■ {20} The City Ordinance means that public nudity may not be prohibited when a person is engaged in conduct constitutionally protected by the First Amendment. *See Spence v. Washington,* 418 U.S. 405, 409, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (stating that conduct "sufficiently imbued with elements of communication" falls within scope of First Amendment); *State v. Johnson,* 104 N.M. 430, 431, 722 P.2d 681, 682 (Ct.App.1986) (noting United States Supreme Court holding that obscenity is not expression protected by First Amendment). *See also City of Farmington v. Fawcett,* 114 N.M. 537, 541, 843 P.2d 839, 843 (Ct.App. 1992) (stating Article II, Section 17 of New Mexico Constitution recognizes that obscenity may be an abuse of free speech). In determining whether particular conduct merits First Amendment protection, the Supreme Court has "asked whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.' " *Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (quoting *Spence v. Washington,* 418 U.S. 405, 410–11, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974)). The issue here is whether the process of piercing a female nipple is "sufficiently imbued with elements of communication." *Spence,* 418 U.S. at 409, 94 S.Ct. 2727. We do not believe that exposing the female body this way for this purpose is an artistic, dramatic, or educational form of expression entitled to First Amendment protection. We agree with other jurisdictions that the *process* of piercing the nipple is not itself communicative. *See State ex rel. Med. Licensing Bd. v. Brady,* 492 N.E.2d 34, 39 (Ind.Ct.App.1986) (concluding courts presented with the issue have found that the process of tattooing is neither speech nor even symbolic speech); *State v. White,* 348 S.C. 532, 560 S.E.2d 420, 423 (2002) (stating defendant made no showing that process of tattooing is communicative).

{21} Nor is there anything in the record showing that there was any "communication" of the type Defendant says she was engaged in. All this record shows is that people were on the sidewalk watching the female customer with her breasts exposed getting her nipples pierced. *See Yurkew v. Sinclair,* 495 F.Supp. 1248, 1254 (D.Minn.1980) (stating there was no showing that normal observer or recipient regarded process of tattooing as communicative).

{22} We affirm the district court's decision that Defendant's conduct did not involve a form of expression and the communication of ideas meriting constitutional protection. The City, therefore, was not required to establish that the conduct was obscene.

## CONCLUSION

{23} The judgment and sentence of the district court is affirmed.

{24} **IT IS SO ORDERED.**

CASTILLO, J., concurs.

BUSTAMANTE, J. (specially concurring).

BUSTAMANTE, Judge (specially concurring).

{25} This case presents a surprisingly difficult issue under our Equal Rights Amendment. The interest at issue here can be viewed as trivial, especially in comparison to the interests considered in *N.M. Right to Choose.* On the other hand, the City has criminalized behavior differently on a gender-based characteristic. *N.M. Right to Choose* can be read to require the City to prove a compelling state interest supporting the classification. The Opinion refuses to label the classification as suspect. I agree with that approach though perhaps for a slightly different reason. The activity and interest at stake is the polar opposite of what *N.M. Right to Choose* considered. No court has recognized any general right or license to public nudity, whereas equal and fair access to health care is of critical importance to us all. The potential harm to women flowing from this classification is slight enough not to

warrant or require the kind of judicial intervention inherent in strict scrutiny review.