FREE THE NIPPLE—Fort Collins, an unincorporated association, Brittiany Hoagland, and Samantha Six, Plaintiffs,

v.

CITY OF FORT COLLINS, Colorado, Defendant.

Civil Action No 16–cv–01308–RBJ

United States District Court, D. Colorado.

Signed October 20, 2016

Andrew Joseph McNulty, David Arthur Lane, Killmer, Lane & Newman, LLP, Denver, CO, Jessica Katherine Peck, Peck Law Firm, LLC, Mount Pleasant, SC, for Plaintiff.

Andrew David Ringel, Christina Shavon Gunn, Gillian Dale, Hall & Evans, LLC–Denver, Denver, CO, Carrie Mineart Daggett, Fort Collins City Attorney's Office, Fort Collins, CO, John R. Duval, City Attorney's Office–Fort Collins, Fort Collins, CO, for Defendant.

## ORDER

R. Brooke Jackson, United States District Judge

This matter is before the Court on defendant's Motion to Dismiss [ECF No. 18] and plaintiffs' Motion for a Preliminary Injunction [ECF No. 2]. This Order solely addresses defendant's Motion to Dismiss. For the reasons below, that motion is GRANTED IN PART and DENIED IN PART.

## I. FACTS

Plaintiffs Brittiany Hoagland, Samantha Six, and Free the Nipple—an unincorporated association of individuals—brought this action challenging a City of Fort Collins ordinance that forbids females from knowingly exposing their breasts in public.[1] ECF No. 1 at ¶ 1 (Complaint); *See* Fort Collins, Co., Mun. Code § 17–142 (2016). Plaintiffs contend that this ordinance discriminates against females and LGBTQIA individuals in violation of the Fourteenth Amendment's Equal Protection Clause and the Equal Rights Amend-

---

1. Plaintiff Brittiany Hoagland is a former resident of Fort Collins and a member of Free The Nipple. ECF No. 1 at ¶ 11. Plaintiff Samantha six is a resident of Fort Collins and a member of Free The Nipple. *Id.* at ¶ 12. Free the Nipple states that it is an organization that advocates for gender equality "by challenging the double standards, hypocrisies, and sexualization of women that supports laws and policies that treat women as inferior to men." *Id.* at ¶ 10.

ment to the Colorado Constitution. ECF No. 1 at ¶¶ 2, 49–58. They also contend that it violates the Free Speech Clause of the First Amendment. *Id.* at ¶¶ 43–48. Plaintiffs have sued the City of Fort Collins seeking both a preliminary injunction [ECF No. 2] and a permanent injunction to prevent defendant from enforcing its allegedly unconstitutional ordinance. *Id.* at 1, 12. Plaintiffs likewise seek declaratory relief as well as costs and attorneys' fees under 42 U.S.C. § 1988. *Id.* at 12.

### Fort Collins, Colorado Municipal Code Section 17–142

Prior to October 20, 2015 Section 17–142 of the Fort Collins Municipal Code stated that "[n]o personal shall knowingly appear in any public place in a nude state or state of undress such that the genitals or buttocks of either sex or the breast or breasts of a female are exposed." *Id.* at ¶ 18. Arguing that this ordinance unduly discriminated against women, plaintiffs and others conducted a protest of the law on August 23, 2015 on the corner of College Avenue and Mulberry Street in downtown Fort Collins. *Id.* at ¶ 26. At that protest, plaintiffs and the other protestors exposed to the public the top half of their bodies with the exception of their nipples and breasts, which they allegedly covered by opaque dressings. *Id.* at ¶ 27.

Plaintiffs allege that their manner of dress at this protest was in full compliance with Section 17–142, *id.* at ¶ 28, but that it was meant to send the message that this ordinance was "borne of tried sex stereotypes, double standards, hypocrisies, and the hyper-sexualization (primarily by men) of women's breasts[,]" *id.* at ¶ 26. They also allege that their protest, and the Free the Nipple organization, is part of a growing activist movement around the country that seeks to overturn similar laws that allow men and boys to expose their breasts and nipples in public but criminalize women and girls who do the same. *See id.* at

¶ 23. Plaintiffs state that they will continue to participate in similar protests in the future. *Id.* at ¶ 39.

In response to plaintiffs' protest, defendant allegedly considered amending or repealing Section 17–142. *Id.* at ¶ 25. Instead of repealing the law outright, however, the Fort Collins City Council proposed a modification to Section 17–142 on October 20, 2015 entitled "Ordinance No. 134." *Id.* at ¶ 29. It reads as follows:

No female who is ten (10) years of age or older shall knowingly appear in any public place with her breast exposed below the top of the areola and nipple while located: (1) in a public right-of-way, in an natural area, recreation area or trail, or recreation center, in a public building, in a public square, or while located in any other public place; or (2) on private property if the person is in a place that can be viewed from the ground level by another who is located on public property and who does not take extraordinary steps, such as climbing a ladder or peering over a screened fence, in order to achieve a point of vantage.

*Id.* at ¶ 30. Ordinance No. 134 defined a "public place" as "a place in which the public or a substantial number of the public has access, and includes but i[s] not limited to highways including sidewalks, transportation facilities, school[s], places of amusement, parks, playgrounds and the common areas of public and private buildings and facilities, and shall not include any theater, concert hall, museum, school or similar establishment to the extent the same is serving as a performance venue." *Id.* This modification also exempted from the law's coverage on women who are breastfeeding in places they are legally entitled to be. *Id.*

On November 3, 2015 the City Council allegedly considered the proposed modifi-

cation, ratifying and implementing it shortly thereafter. *Id.* at ¶ 38. Plaintiffs allege that this modification of Section 17–142 did little to mollify their concerns about the law's discriminatory nature.[2] *See id.* at ¶ 38. They contend that defendant, through its implementation of the new version of Section 17–142, "continu[es] the criminalization of women who appear at public places with their breasts and nipples exposed." *Id.* Plaintiffs point out that Section 1–15 of the Fort Collins Code of Ordinances states that each violation of Section 17–142 is punishable "by . . . a fine not exceeding two thousand six hundred fifty dollars ($2,650.00) or by imprisonment not exceeding one hundred eighty (180) days, or by both such fine and imprisonment, in addition to any costs which may be assessed." *Id.* at ¶ 40. They allege that Section 17–142 is consequently "one of the most restrictive public nudity ordinances in the nation." *Id.* at ¶ 41.

Plaintiffs state that the City Council advanced three rationales for this modification to Section 17–142: "(1) That women who appear in public with their breasts and nipples exposed violate the values of the Fort Collins community, including its sense of decency and family, (2) That women with exposed breasts impede the right of others to enjoy public spaces, and (3) That women with exposed breasts constitute pornography, which children cannot legally view." *Id.* at ¶ 31. Plaintiffs likewise assert that in passing Section 17–142 "Defendant also made veiled references to religious morality as a principle backing the continued criminalization of women who appear at public places with their breasts and nipples exposed." *Id.* at ¶ 32. Defendant accepts for the purposes of its motion to dismiss that the City Council discussed these three quoted rationales, but counters

that they do not represent the "complete rationale" for the ordinance. ECF No. 18 at 4 n.3.

Finally, in their Complaint plaintiffs quote several e-mail exchanges between Fort Collins officials and citizens of Fort Collins allegedly showing that the ordinance targeted plaintiffs' "expressive activity." ECF No. 1 at ¶ 36. First, plaintiffs quote an e-mail exchange between Fort Collins city councilor Ray Martinez and a citizen of Fort Collins in which Martinez stated that he planned to vote in favor of Ordinance No. 134 "because allowing women to appear topless at public places would 'denigrate[ ] a woman's respect and value.'" *Id.* at ¶ 33. Martinez then allegedly wrote that "[w]e endorse a program from the White House called 'It's on us', to prevent women from assaults . . . this kind of ordinance [allowing women to legally expose their breasts in public] is counterproductive to the very cause" and that "[w]e have nothing to gain by passing such a law [permitting public female toplessness] other than a poor reputation." *Id.* Plaintiffs also quote an exchange between Fort Collins Mayor Wade Troxell and a Fort Collins citizen in which the citizen commented: "[w]hy would any citizen here with any kind of morals want [women to be able to legally expose their breasts in public] or want to allow that? This would take the morality of our city down the tubes." *Id.* at ¶ 34. Troxell allegedly stated in response that he "agree[d] with [the citizen's] sentiments and concerns" and that he supported "the update revision of our current version of the ordinance." *Id.*

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts

**2.** For ease of use the Court will refer to Section 17–142 and Ordinance No. 134 simply as "Section 17–142."

to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681, 129 S.Ct. 1937. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g., Twombly*, 550 U.S. at 556, 127 S.Ct. 1955; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### III. ANALYSIS

Defendant seeks dismissal of each of plaintiff's three claims for relief. Agreeing with defendant that dismissal of plaintiffs' First Amendment claim is appropriate, but not that plaintiffs' Fourteenth Amendment claim or their claim under the Equal Rights Amendment to the Colorado Constitution should be dismissed, the Court GRANTS IN PART and DENIES IN PART defendant's motion. I address each claim in turn.

### A. Plaintiffs' First Amendment Claim.

Defendant first seeks dismissal of plaintiff's First Amendment claim (Claim I). It makes three arguments: (1) Section 17–142 does not violate the First Amendment because plaintiffs' planned topless protests do not constitute protected speech; (2)

topless bans such as Section 17–142 are constitutionally permissible regulations under the Supreme Court's decision in *U.S. v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); and (3) in the alternative, such bans are constitutionally permissible under the Court's "time, place, and manner" analysis as described in *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). ECF No. 18 at 4–13. Agreeing with defendant's first argument, I dismiss with prejudice plaintiff's First Amendment claim.

In order for conduct, such as appearing topless in public, to constitute "protected speech" warranting First Amendment protection, the actor performing the conduct must: (1) "inten[d] to convey a 'particularized message[;]'" and (2) must demonstrate that there is a great "likelihood ... that the message would be understood by those who viewed it." *See Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (quoting *Spence v. Washington*, 418 U.S. 405, 411–12, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974)); *Cressman v. Thompson*, 798 F.3d 938, 945 (10th Cir. 2015), *cert. denied*, —— U.S. ——, 136 S.Ct. 1452, 194 L.Ed.2d 550 (2016). Here, there is no debate that plaintiffs meet the first prong of that test. ECF No. 1 at ¶ 23 (adequately stating that plaintiffs intend to convey a particularized message about how laws like Section 17–142 are "outdated" and "sexist"); ECF No. 18 at 5 (arguing that plaintiffs have failed to meet only the second prong of the *Spence* test); *see also Free the Nipple–Springfield Residents Promoting Equal. v. City of Springfield*, 153 F.Supp.3d 1037, 1045 (W.D. Mo. 2015) ("Plaintiffs have alleged their conduct was intended to convey a particularized message ... and the Court certainly credits their allegations about their intent.") (internal quotation marks and citation omitted).

■ However, I find that plaintiffs' conduct does not warrant First Amendment protection because they have not adequately stated that there is a great likelihood that their nudity's message about the sexualized nature of certain laws is likely to be understood by those who view them topless in public. *See Spence*, 418 U.S. at 411–12, 94 S.Ct. 2727. First, I note that plaintiffs attempt to satisfy that second prong by simply alleging that their "expressive conduct ... is likely to be understood by those who view it." *See* ECF No. 1 at ¶ 45. That allegation is conclusory and is insufficient to state a claim. *See Iqbal*, 556 U.S. at 681, 129 S.Ct. 1937. Nevertheless, plaintiffs also argue elsewhere in their Complaint that the message of their nudity is evident because a "hallmark of the Free the Nipple [national] movement" is nudity, see *id.* at ¶ 23, and that nudity is part and parcel of their protest's message about the allegedly sexist nature of certain laws, see *id.* at ¶ 39.

As defendant correctly points out, however, a persuasive amount of case law suggests that public nudity itself is not inherently expressive of any particular message. *See Craft v. Hodel*, 683 F.Supp. 289, 291 (D. Mass. 1988) (recognizing "the large and growing body of caselaw rejecting attacks on the regulation of public nudity" and rejecting the argument "that [the plaintiffs'] message of protest against [female] exploitation [by men and society] is conveyed particularly by their nudity" because "that is only a matter of perspec-

tive"); *see also City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) ("Being 'in a state of nudity' is not an inherently expressive condition."); *Roth v. United States*, 354 U.S. 476, 512, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) (Douglas, J., dissenting) ("No one would suggest that the First Amendment permits nudity in public places[.]"). Rather, as another court has put it, "at most [nudity] is a medium by which a variety of messages may be conveyed." [3] *Craft*, 683 F.Supp. at 291.

Furthermore, as the Supreme Court has reasoned, if the specific message one's nudity is meant to convey would not be understood without accompanying explanatory speech, that is "strong evidence that the conduct as issue ... is not so inherently expressive that it warrants protection[.]" *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006). I find that to be the case here. *See, e.g.,* ECF No. 1 at ¶ 23 ("Completely topless protest is a hallmark of the Free the Nipple movement."); *see also Tagami v. City of Chicago*, No. 14 CV 9074, 2016 WL 397322, at *2 (N.D. Ill. Feb. 1, 2016) (reconsidering the court's earlier denial of the defendant's motion to dismiss plaintiff's First Amendment challenge to a city ordinance banning female toplessness because the court realized it had "bent over backwards ... when considering whether [the plaintiff's] purported message would be understood");

---

**3.** The District Court of Massachusetts acknowledged in *Craft* that some "courts have left dicta ... suggesting that on certain occasions, in special circumstances, public nudity may constitute protected speech." *Craft*, 683 F.Supp. at 291. However, the court quickly put that counterargument to rest. It pointed out that this dicta was based on the Court's decision in *Spence v. Washington*, which, as described *supra*, held that conduct generally warrants First Amendment protection if it is: (1) intended to convey a "particularized mes-

sage;" and (2) there is a great "likelihood ... that the message would be understood by those who viewed it." *Id.* (quoting *Spence*, 418 U.S. at 410–11, 94 S.Ct. 2727). The court in *Craft* then persuasively reasoned that the "[p]rovocative suggestion[] that with 'something more' public nudity becomes protected speech do[es] not ... survive sustained scrutiny" because public nudity, as the court had earlier concluded, always fails the *Spence* test as it "cannot be understood to convey a particularized message to those who view it." *Id.*

*id.* (dismissing plaintiff's challenge because the Supreme Court held in *City of Erie v. Pap's A.M.*, 529 U.S. 277, 299, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) that "public nudity is not inherently expressive" and also that the "[c]ourt was remiss when it considered the verbally communicated message in its consideration of the circumstances" in light of the Court's decision in *Rumsfeld*, 547 U.S. at 66, 126 S.Ct. 1297).

Plaintiffs' argument that their nudity would be understood because the Free the Nipple is a recognizable, nationwide organization also does not persuade the Court that plaintiffs' public nudity is protected by the First Amendment.[4] *See* ECF No. 31 at 4. A casual observer of a Free the Nipple protest would first have to recognize that the topless individuals were in fact protestors and members of Free the Nipple (presumably through some form of signage, verbal communication, or a news article) in order to understand what plaintiffs' nudity was intended to convey. As I explained earlier, however, the Court has held that conduct and any verbally communicated messages explaining such conduct are best considered separately when deciding whether conduct itself is expressive of a recognizable message. *See Rumsfeld*, 547 U.S. at 66, 126 S.Ct. 1297.

Finally, I respectfully do not agree with the court's decision in *Free the Nipple–Springfield Residents Promoting Equal. v. City of Springfield*, denying a motion to dismiss Free the Nipple's First Amendment challenge to a similar law. *See* 153 F.Supp.3d 1037, 1045 (W.D. Mo. 2015). The court acknowledged that the parties had not addressed the issue of whether Free the Nipple adequately alleged that the message its members' public nudity was intended to convey had a great likelihood

of comprehension by those who viewed it. *Id.* Thus, finding that defendant failed to meet its burden because it "ha[d] not demonstrated that, as a matter of law, Plaintiffs' conduct is *not* expressive[,]" the court denied defendant's motion to dismiss Free the Nipple's First Amendment claim. *Id.* (emphasis in original). Here, because I find that defendant *has* met that burden, I instead grant defendant's motion to dismiss plaintiffs' First Amendment challenge to Section 17–142.

**B. Plaintiffs' Fourteenth Amendment Equal Protection Clause Claim.**

Defendant next seeks dismissal of plaintiff's Fourteenth Amendment equal protection claim (Claim II). It once again makes three arguments in favor of dismissal: (1) Section 17–142's gender classification does not violate the Fourteenth Amendment because it is realistically based on differences between the sexes; (2) prohibiting the public exposure of only female breasts passes intermediate scrutiny because it is "substantially related" to an "important government interest;" and (3) numerous other courts have persuasively rejected equal protection challenges to similar laws. ECF No. 18 at 13–20. I find these arguments unconvincing.

My task at this point in the litigation is not to make factual findings or to decide the merits of the parties' arguments as defendant would have it, but rather to assess whether plaintiffs adequately allege a Constitutional violation. *See Twombly*, 550 U.S. at 570, 127 S.Ct. 1955; *Free the Nipple–Springfield*, 153 F.Supp.3d at 1047 (denying the defendant's motion to dismiss Free the Nipple's Fourteenth Amendment challenge to a similar law in Springfield,

---

4. Nor does plaintiffs' conclusory allegation that the City Council targeted "Plaintiffs' expressive activity" with the November 2015 modification to Section 17–142 persuade me that their nudity warrants First Amendment protection. *See* ECF No. 1 at ¶ 36; *Iqbal*, 556 U.S. at 681, 129 S.Ct. 1937.

Missouri because "the procedural posture precludes the Court from making factual findings").

With respect to their Fourteenth Amendment claim, I find that plaintiffs have met that burden here. *See id.* They allege that Section 17–142 is unconstitutional because the purportedly "real" difference between the sexes on which the law is premised is subsequently used "to perpetuate stereotypes about girls and women[,]" namely that society considers women and their breasts "primarily objects of sexual desire." ECF No. 1 at ¶ 37. They further assert that the several rationales the Fort Collins City Council had for the law—adequately summed up as Fort Collins' desire to protect the public's moral sensibilities, see ECF No. 1 at ¶ 31—are also themselves premised on unconstitutional stereotypes of, generalizations about, and prejudices against women. *See People v. Santorelli,* 80 N.Y.2d 875, 881, 587 N.Y.S.2d 601, 600 N.E.2d 232 (N.Y. 1992) (Titone, J. concurring) ("One of the most important purposes to be served by the Equal Protection Clause is to ensure that 'public sensibilities' grounded in prejudice and unexamined stereotypes do not become enshrined as part of the official policy of government. Thus, where 'public sensibilities' constitute the justification for a gender-based classification, the fundamental question is whether the particular 'sensibility' to be protected is, in fact, a reflection of archaic prejudice or a manifestation of a legitimate government objective[.]"); *see also Miss. Univ. for Women v. Hogan,* 458 U.S. 718, 724–25, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) ("Care must be taken in ascertaining whether the statutory objective *itself* reflects archaic and stereotypic notions.") (emphasis added). Such an argument adequately states a

claim of a Fourteenth Amendment equal protection violation. *See, e.g., U.S. v. Virginia,* 518 U.S. 515, 533–34, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (explaining that a law is unconstitutional under the Fourteenth Amendment if it is passed in order to "create or perpetuate the legal, social, [or] economic inferiority of women").

A brief discussion of the development of the Court's equal protection jurisprudence helps illustrate the Constitutional concerns plaintiffs raise. In the early part of the last century, governments routinely discriminated against one sex based on perceived differences between men and women. The Court upheld these laws. For instance, the Court in *Goesaert v. Clearly* upheld a Michigan ban on female bartenders that Michigan had premised on "real" differences between men and women because the Court found that Michigan had legitimate concerns about "moral and social problems" that might arise if the law were otherwise. *See Goesaert v. Cleary,* 335 U.S. 464, 466, 69 S.Ct. 198, 93 L.Ed. 163 (1948); *Hogan,* 458 U.S. at 725 n.10, 102 S.Ct. 3331 (discussing *Goesaert,* 335 U.S. at 466, 69 S.Ct. 198). Likewise, in *Michael M. v. Superior Court of Sonoma County,* the Court upheld under intermediate scrutiny a California statutory rape law criminalizing only males and labeling only females potential victims because of concerns arising from purportedly "real" differences between the sexes. *See* 450 U.S. 464, 475–76, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981) (plurality opinion).

As the Court's sex discrimination jurisprudence developed, however, the Court came to undermine its reasoning in those and other decisions about there being "broad leeway" for government to discriminate based on "real" differences between men and women.[5] *See* Cary Franklin, *The*

---

5. Though *Michael M.* remains good law today, the judgment of the Court in that case has been thoroughly criticized. *See, e.g.,* Cary

Franklin, *The Anti–Stereotyping Principle in Constitutional Sex Discrimination Law,* 85 N.Y.U. L. Rev. 83, 128 (2010) (explaining that

*Anti–Stereotyping Principle in Constitutional Sex Discrimination Law*, 85 N.Y.U. L. Rev. 83, 145 (2010). Instead, the Court acknowledged that while there may be some "real" differences between men and women, these differences may only serve as the basis of discriminatory laws when such laws "compensate" one sex for the disabilities or inequities that sex has historically suffered. *See Virginia*, 518 U.S. at 531, 116 S.Ct. 2264. These difference could not be used "to create or perpetuate the legal, social, and economic inferiority" of one sex as governments had once routinely done. *See id.*; *Hogan*, 458 U.S. at 725 n.10, 102 S.Ct. 3331; *Craig v. Boren*, 429 U.S. 190, 210, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Thus, whereas the Court previously interpreted the Fourteenth Amendment to allow governments to discriminate based on "real" differences to promote "sex-based inequality[,]" the Court has since interpreted the Equal Protection Clause to permit only those laws that do the opposite. *See* Franklin, *supra* at 146.

Here, plaintiffs contend that Section 17–142 is a law that falls into that former, prohibited category. They therefore adequately allege an equal protection viola-tion. For its part, defendant invokes the Court's old equal rights jurisprudence that says that the Constitution broadly permits government to discriminate based on sex when it does so pursuant to a "real" difference between the sexes. *See* ECF No. 18 at 14–18. In making that argument, defendant relies heavily on *Michael M.* and decisions from several other cases dealing with laws similar to Section 17–142.[6] *See id.* However, defendant never seriously explains why plaintiff's argument that Section 17–142 and its justifications are unconstitutionally grounded in stereotypes and prejudices does not state a viable equal protection claim. *See, e.g.*, ECF No. 35 at 16 (attempting to counter plaintiff's argument by stating that Section 17–142's prohibition of public female breast exposure actually "acknowledges the superiority of women, whose breasts have an appearance and functions men's breasts simply do not"). Accordingly, defendant fails to convince this Court that plaintiffs' argument about Section 17–142 does not adequately state a valid equal protection claim and its motion is denied with respect to Claim II.

the Court in *Michael M.* "upheld a sex discriminatory statutory rape law after identifying some dubious, but ostensibly "real," differences between men and women in regard to sex and reproduction").

6. The numerous cases defendant cites that find that similar laws do not violate equal protection do not persuade me to defendant's side. Those cases mostly found that these similar laws did not violate equal protection at the summary judgment phase, see *J & B Soc. Club No. 1, Inc. v. City of Mobile*, 966 F.Supp. 1131, 1134 (S.D. Ala. 1996), or were criminal appeals by defendants arguing that the laws under which they were prosecuted were unconstitutional, see *City of Albuquerque v. Sachs*, 135 N.M. 578, 92 P.3d 24, 28 (N.M. App. 2004). Though the Northern District of Illinois in *Tagami v. City of Chicago*, like the present case, dealt with a motion to dismiss a plaintiff's Fourteenth Amendment challenge to an ordinance quite similar to Section 17–142, the court devoted a total of three sentences to its analysis of that issue. See 2015 WL 4187209, at *3. Moreover, unlike the plaintiff in *Tagami*, which the court found did not allege that the ordinance in that case perpetuated the social inferiority of women, see *id.*, I find that plaintiffs have done so here. *See supra*. Lastly, I point out that some of the cases defendant cites were decided over four decades ago. See, e.g., *Eckl v. Davis*, 51 Cal. App.3d 831, 124 Cal.Rptr. 685, 696 (1975). Recognizing that the Court's sex discrimination jurisprudence has drastically changed since then, see *supra*, and that society has also come to recognize stereotypes and prejudices it could not perceive earlier, I find the persuasiveness of the reasoning from these cases drastically diminishes.

### C. Plaintiffs' Colorado Constitution Equal Rights Amendment Claim.

Lastly, defendant seeks dismissal of plaintiffs' claim that Section 17–142 violates their right to equal protection under the Equal Rights Amendment to the Colorado Constitution (Claim III). *See* ECF No. 18 at 20–21. Defendant argues for dismissal of that claim by reiterating its arguments against plaintiffs' Fourteenth Amendment equal protection claim, pointing out that "the Colorado Supreme Court 'follow[s] the analytical mode developed by the United States Supreme Court in construing the Equal Protection Clause of the Fourteenth Amendment' " (i.e. intermediate scrutiny). *Id.* at 20 (quoting *7250 Corp. v. Bd. of Cnty. Com'rs for Adams Cnty.*, 799 P.2d 917, 922 (Colo. 1990) (en banc), which in turn quotes *Tassian v. People*, 731 P.2d 672, 674 (Colo. 1987)). Plaintiffs point out that defendant errs in its arguments because plaintiffs assert their claim under the Equal Rights Amendment to the Colorado Constitution, not the Colorado Constitution's Equal Protection Clause. ECF No. 31 at 14. They therefore argue that the even more exacting standard of strict scrutiny should apply. *Id.* at 31 (citing *Colo. Civil Rights Com. v. Travelers Ins. Co.*, 759 P.2d 1358, 1363 (Colo. 1988)).

Though plaintiffs appear to be right, see *Colo. Civil Rights Com*, 759 P.2d at 1363 (stating that Colorado's Equal Rights Amendment "requires that legislative classifications based exclusively on sexual status receive the closest judicial scrutiny"), the Court does not feel the need to wade into this issue because, as discussed *supra*, plaintiffs have at the very least adequately stated a claim under the Fourteenth Amendment Equal Protection Clause's intermediate scrutiny standard. *See supra* Part III.B. Accordingly, defendant's motion to dismiss plaintiffs' claim under the Colorado Constitution's Equal Rights Amendment is denied.

### ORDER

For the reasons above, the Court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss. Plaintiffs' First Amendment claim (Claim I) is dismissed with prejudice.